Spencer G. Scharff (028946)
**SCHARFF PLC**
502 West Roosevelt Street
Phoenix, Arizona 85003
T: (602) 739-4417
spencer@scharffplc.com

Roopali H. Desai (024295)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
T: (602) 381-5490
F: (602) 224-6020
rdesai@cblawyers.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Rivko Knox,<br><br>Plaintiff,<br><br>v.<br><br>Mark Brnovich, in his official capacity as Arizona Attorney General,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiff Rivko Knox brings this action against Mark Brnovich, in his official capacity as Arizona Attorney General ("Defendant"), and alleges as follows:

**NATURE OF THE CASE**

1. This action challenges the constitutionality of A.R.S. § 16-1005(H), which was amended by House Bill ("HB") 2023 in 2016 (hereinafter referred to as "HB 2023"). HB 2023 criminalizes lawful conduct—the "collection" and delivery of early ballots. Specifically, HB 2023 makes it a class 6 felony for any person to "knowingly

{00374094.3 }

collect[] voted or unvoted early ballots from another person," with a presumptive sentence of one year of incarceration and a fine of up to $150,000 plus surcharges.

2. Under HB 2023, the term "collects" means "to gain possession or control of an early ballot."

3. HB 2023 exempts the collection of early ballots for elections held by certain special taxing districts and ballots collected by a voter's family member, household member, or caregiver. The terms "caregiver," "family member," and "household member" are defined in HB 2023.

4. HB 2023 also exempts "[a]n election official, a United States postal service worker or any other person who is allowed by law to transmit United States mail … if the official, worker or other person is engaged in official duties." However, HB 2023 does not define the phrases "allowed by law to transmit U.S. mail" or "engaged in official duties."

5. HB 2023 regulates the handling of U.S. Mail. An unvoted early ballot delivered to the wrong address is a piece of mail. Also, once sealed in an envelope with pre-paid postage, a voted early ballot becomes a piece of mail. HB 2023's prohibition against collecting and delivering a voted or unvoted early ballot constitutes the regulation of U.S. Mail.

6. Article I, Section 8, Clause 7 of the United States Constitution authorizes Congress "[t]o establish Post Offices and post Roads[.]" The Postal Power allows Congress to regulate the entire postal system. *See Ex Parte Rapier*, 143 U.S. 110, 113 (1892). Since 1792, Congress has exercised its authority to regulate the handling of U.S. Mail. *See* 18 U.S.C. § 1691, et. seq.

7. Specifically, federal law expressly permits the private carriage of mail without compensation. *See* 18 U.S.C. § 1696(c).

8. Thus, HB 2023 is preempted by federal law because it prohibits permitted methods of private carriage of mail-in ballots.

9. Moreover, HB 2023 directly infringes free-speech rights because it unconstitutionally restricts Plaintiff's and other's access to voluntary, private mail carriage.

10. HB 2023 is also excessively and unconstitutionally vague because it exempts a person who is "allowed by law to transmit U.S. mail," but only if the person is "engaged in official duties," and HB 2023 does not define those phrases. Even though Plaintiff believes she is authorized to transmit U.S. mail because **all** persons are authorized to transmit mail, she does not know if she is protected from criminal sanctions under HB 2023 because she is unable to determine whether she is "engaged in official duties."

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims under the U.S. Constitution, as well as under 42 U.S.C. § 1983.

12. The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

13. The Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

14. Venue is proper in this District under 28 U.S.C. § 1391(b). Defendant is sued in his official capacity and his official place of business is located within this District. All of the events giving rise to this Complaint occurred within this District. The events giving rise to this Complaint are the enactment, within this District, of an unconstitutional statute of the State of Arizona, and its implementation, enforcement, and threatened prosecution by Defendant.

## PARTIES

15. Plaintiff Rivko Knox is a citizen of Arizona and has resided in this state since 1966. [Knox Declaration ("Decl."), attached hereto as **Exhibit 1**, at ¶ 2.]

1    16. Defendant Mark Brnovich is the Arizona Attorney General ("Attorney General") and chief legal officer of the State of Arizona. A.R.S. § 41-192(A). Among other duties, the Attorney General is charged with enforcing state criminal statutes, including HB 2023. The Attorney General is empowered to enforce state election laws like HB 2023 "[i]n any election for state office, members of the legislature, justices of the supreme court, judges of the court of appeals or statewide initiative or referendum," A.R.S. § 16-1021. Defendant Brnovich is sued in his official capacity.

## ALLEGATIONS

*Collecting and delivering mail-in ballots before and after the enactment of HB 2023*

17. Plaintiff Rivko Knox ("Plaintiff" or "Ms. Knox") is active in her community and is currently a Democratic Precinct Committeeperson ("PC") for the Acacia Precinct. [Knox Decl. at ¶ 3.] She is also a longstanding member of the League of Women Voters of Arizona ("LWVAZ"), which is a non-profit, non-partisan political membership organization, the fundamental goal of which is to empower citizens to shape better communities worldwide. [*Id*.] The LWVAZ seeks to achieve this goal by, among other things, building public participation in the democratic process and engaging communities in promoting positive solutions to public policy issues through education and advocacy. [*Id*.]

18. A large part of Ms. Knox's community involvement, both before and since becoming a PC, is to engage in door-to-door canvassing to initiate direct contact with individuals to raise awareness about candidates and issues, register voters, and encourage participation in the democratic process. [Knox Decl. at ¶ 4.]

19. Ms. Knox canvasses every month of every year, regardless of whether it is an election year. [Knox Decl. at ¶ 5.] On average, Ms. Knox canvasses 1-2 times per month for 2-3 hours per canvass. [*Id.* at ¶ 6.] She typically knocks on 20-30 doors during a single canvass and, on average, someone answers the door approximately 50% of the time. [*Id.*]

{00374094.3}                                          -4-

20. Ms. Knox often encourages voters to fill out and mail their early, mail-in ballots when she is canvassing door-to-door in neighborhoods. [Knox Decl. at ¶ 7.]

21. Prior to the 2016 election cycle, Ms. Knox accepted and delivered at least one voted ballot for a voter that she met while canvassing, and who requested that she deliver an early ballot. [Knox Decl. at ¶ 8.]

22. Prior to the 2016 election cycle, she desired and was willing to assist voters who requested that she deliver their voted early ballots to a United States mail receptacle, the County Recorder's Office, an early voting center, or a polling place. [Knox Decl. at ¶ 9.]

23. In 2016, HB 2023 was enacted to prohibit the collection and delivery of mail-in ballots. HB 2023 amended A.R.S. § 16-1005 by adding the following provisions:

> H. A person who knowingly collects voted or unvoted early ballots from another person is guilty of a class 6 felony. An election official, a United States postal service worker or any other person who is allowed by law to transmit United States mail is deemed not to have collected an early ballot if the official, worker or other person is engaged in official duties.
>
> I. Subsection H of this section does not apply to:
>
> 1. An election held by a special taxing district formed pursuant to title 48 for the purpose of protecting or providing services to agricultural lands or crops and that is authorized to conduct elections pursuant to title 48.
>
> 2. A family member, household member or caregiver of the voter. For the purposes of this paragraph:
>
> (a) "Caregiver" means a person who provides medical or health care assistance to the voter in a residence, nursing care institution, hospice facility, assisted living center, assisted living facility, assisted living home, residential care institution, adult day health care facility or adult foster care home.
>
> (b) "Collects" means to gain possession or control of an early ballot.
>
> (c) "Family member" means a person who is related to the voter by blood, marriage, adoption or legal guardianship.

1
2       (d) "Household member" means a person who resides at the same residence as the voter.

3       24.     Since the effective date of HB 2023, Ms. Knox is very careful not to offer
4  to deliver or accept for delivery another person's early ballot, even if they ask her for
5  assistance. [Knox Decl. at ¶ 10.]

6       25.     For example, Ms. Knox canvassed for a candidate seeking election in the
7  Special Election for Congressional District 8 in April 2018. While she was canvassing
8  on Sunday, April 22, 2018 (two days before the April 24, 2018 Special Election), she
9  encountered several voters who had not yet mailed their early ballots. Ms. Knox was
10 required to censor herself by not offering to collect and deliver the voters' early ballots,
11 even though she knew based on her experience that it was unlikely that the voters would
12 deliver their ballots in time to be counted. Rather than offering to collect and deliver
13 early ballots for these voters on April 22, 2018, Ms. Knox encouraged the voters not to
14 place their ballots in the mail because it was too late and, instead, to deliver their ballots
15 to an appropriate location before the polls closed. [Knox Decl. at ¶ 11.]

16      26.     Although Ms. Knox presently desires to collect and deliver—without
17 compensation—voted, mail-in ballots, she fears doing so as a result of the passage of
18 HB 2023. [Knox Decl. at ¶ 22.]

19      27.     Indeed, if the statute did not exist and it was not ostensibly illegal to
20 collect and deliver completed mail-in ballots for voters, Ms. Knox would offer to
21 deliver ballots for voters she meets while canvassing. [*Id.*]

22      28.     Further, Ms. Knox would organize canvassing events at nursing homes
23 and adult community centers for the purpose of collecting and delivering mail-in ballots
24 of elderly and sick voters. [Knox Decl. at ¶ 25.]

25      29.     Ms. Knox believes that assisting voters with the delivery of their early
26 ballots was, and continues to be, a part of expressing her political belief that all
27 registered voters have an opportunity to use their franchise. [Knox Decl. at ¶ 13.]

28

{00374094.3}                          -6-

30. Specifically, Ms. Knox supports the continued and widespread use of voting by mail, and believes that the United States' postal system provides a secure and easy platform to exercise the franchise and conduct elections. [Knox Decl. at ¶ 16.]

31. In her view, this is especially true today because the number of voters who receive early ballots by mail increases every year. [Knox Decl. at ¶ 17.]

32. Ms. Knox desires and plans to engage in door-to-door canvasing in connection with the upcoming 2018 Primary and General Elections, but fears prosecution if she delivers an early ballot for another person. [Knox Decl. at ¶¶ 20–22.]

33. Ms. Knox sometimes mistakenly receives mail directed to her neighbors and, in such cases, she takes the piece of mail to her neighbor's house. Prior to the passage of HB 2023, Ms. Knox would have freely and without hesitation delivered an unvoted early ballot to a neighbor if she mistakenly received the neighbor's early ballot in her mailbox. As a direct result of HB 2023, Ms. Knox would not follow the same practice if she mistakenly received a neighbor's early ballot in her mailbox. [Knox Decl. at ¶ 27.]

*Private-Carriage Exception to the Private Express Statutes*

34. Congress enacted the Private Express Statutes, 18 U.S.C. §§ 1693–1699, 39 U.S.C. §§ 601–606, pursuant to its constitutional authority to establish "Post Offices and post roads," U.S. Const. art. I, § 8, cl. 7. In general, these statutes establish the United States Postal Service ("USPS") as a monopoly by prohibiting others from carrying letters over postal routes.

35. A postal monopoly has prevailed in this country since the Articles of Confederation, *see* Act of Oct. 18, 1782, 23 J. Continental Cong. 672–673 (G. Hunt ed. 1914), and Congress embraced the concept in its first postal law, *see* Act of Feb. 20, 1792, ch. 7, § 14, 1 Stat. 236. Because Congress desires "prompt, reliable, and efficient services to [postal] patrons in all areas," 39 U.S.C. § 101(a), it has enacted the Private Express Statutes and has provided for nationwide delivery of mail at uniform rates.

36. From its inception, the monopoly granted the USPS had always been limited to the carriage of mail "for hire." *See* Act of Oct. 18, 1782, 23 J. Continental Cong. 670, 672–673 (G. Hunt ed. 1914); Act of Feb. 20, 1792, ch. 7, § 14, 1 Stat. 236. The private-carriage exception is a reflection of the limited nature of the monopoly; it was designed to ensure that private carriage is not undertaken "for hire or reward." *Ibid.*

37. While the limited nature of the postal monopoly always implied that private, gratuitous carriage was excepted from the prohibitions of the Private Express Statutes, Congress made the exception express in 1845. *See* S. Rep. No. 137, 28th Cong., 1st Sess., 1, 10 (1844); H.R. Rep. No. 477, 28th Cong., 1st Sess., 1 (1844).

38. Congress developed a narrow exception for carriage by "private hands," crafting the exception in such a way as to permit only gratuitous carriage undertaken out of friendship, not pursuant to a business relationship. H.R. Rep. No. 477, *supra*, at 4 ("Penalties are provided ... with exceptions in favor of the party ... who conveys the letter out of neighborly kindness, without fee or reward").

39. Congress used unambiguous language to accomplish its goals. Persons or entities other than the United States Postal Service—*i.e.*, "private hands"—may carry letters without violating the Private Express Statutes only so long as they do not receive any form of benefit from the sender, *i.e.*, "without compensation." *See* 18 U.S.C. § 1696(c) ("This chapter shall not prohibit the conveyance or transmission of letters or packets by private hands without compensation, or by special messenger employed for the particular occasion only."); 39 CFR § 310.3(c) ("The sending or carrying of letters without compensation is permitted.").

40. In fact, the USPS actually uses Arizona in its published example of private letter carriage:

> Laura Bowley plans to travel to Cottonwood, Arizona. A friend asks Mrs. Bowley to carry a letter to another friend who resides there without payment of any compensation. Such private carriage is permissible under this exception.

Publication 542 - Understanding the Private Express Statutes (June 2014).

41. Notably, the Postal Service has asserted its authority over the transmission of "Balloting Materials." *See, e.g.*, USPS Domestic Mail Manual ("8.0 Balloting Materials"); Balloting Materials Postage, 78 Fed. Reg. 25677 (proposed May 2, 2013) (codified at 39 § C.F.R. 111) (requiring all ballot types to indicate that the proper amount of postage must be paid and requiring balloting materials to indicate the amount of postage for the return of ballots, unless mailed under the special exemption for military or overseas voting or returned under Business Reply Mail service).

*Attorney General's Threatened Strict Enforcement*

42. Since its enactment, the Defendant has repeatedly emphasized his intent to prosecute any and all efforts to collect mail-in ballots. For example, in an October 3, 2016 court filing, the Defendant stated:

> Because H.B. 2023 is a criminal law, neither county nor state elections officials are responsible for its enforcement. Instead, that task falls to the Attorney General, who intends to act on any information he receives regarding violations of H.B. 2023. *See* A.R.S. § 16-1021.

*Feldman, et al. v. Reagan, et al.*, No. 16-01065, Dkt. 212 at 18.

43. In light of the above and other statements made by Defendant and his agents about their intention to strictly enforce HB 2023, Plaintiff faces a credible threat of prosecution for engaging in her desired conduct—delivering mail-in ballots without compensation for other Arizona voters.

*August 2018 Primary Election*

44. Arizona is holding a statewide primary election on August 28, 2018 (the "2018 Primary Election").

45. Vote-by-mail ballots will be mailed to Arizona voters on August 1, 2018.

46. Election Officials have informed voters that they must mail their voted ballot via the United States Postal Service by August 22, 2018. *See, e.g.*, https://recorder.maricopa.gov/elections/electioncalendar.aspx.

47. Plaintiff intends to engage in activities governed by the private-carrier exception in connection with the 2018 Primary Election—collect and return mail-in ballots.

48. Plaintiff, however, will not collect and return ballots if she does not obtain the judicial relief presently requested.

## DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS

49. An actual and substantial controversy exists between Plaintiff and Defendant as to their respective legal rights and duties. Plaintiff contends that she has already been harmed by HB 2023, that she faces an imminent threat of harm if HB 2023 is enforced, and that HB 2023 violates the U.S. Constitution and federal law. Defendant is obligated to enforce HB 2023 unless it is found to be illegal.

50. In violating Plaintiff's rights under the U.S. Constitution and federal law, Defendant will be acting under color of law.

51. If not enjoined, HB 2023 will continue to thwart Plaintiff's lawful conduct and subject her to criminal prosecution, and thus cause irreparable injury to Plaintiff.

52. Plaintiff has no plain, speedy, and adequate remedy at law against HB 2023 other than the relief requested in this Complaint.

53. Defendant's enforcement of HB 2023 constitutes an official policy of the State of Arizona.

54. Plaintiff is entitled to a declaration that HB 2023 is unconstitutional on its face and to an order preliminarily and permanently enjoining its enforcement.

## FUTURE PLANS AND ONGOING AND IRREPARABLE HARM

55. In the future, Plaintiff intends to take actions materially similar to those that she desires and intends to take here, if not limited or prohibited by the challenged laws. Given the recurring election-related context, the usual length of time of litigation such as this to be finally resolved, and the ongoing restrictions imposed by HB 2023, there is a strong likelihood that situations similar to those described above will recur without opportunity for full litigation. Thus, even if this case is not fully litigated

before the 2018 Primary Election, this case will not be moot because it will be capable of repetition yet evading review.

56. Plaintiff faces a credible threat of prosecution if she proceeds with her intended activities without the requested relief.

57. If Plaintiff does not obtain the requested relief, she will not proceed with her intended activities. In such an event, she will continue to be deprived of her constitutional rights under the Supremacy Clause, and the First and Fourteenth Amendments to the United States Constitution and will suffer irreparable harm. There is no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT ONE

### (Supremacy Clause; 42 U.S.C. § 1983)

58. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

59. The Supremacy Clause, Article VI, Section 2, of the U.S. Constitution provides:

> This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution of laws of any State to the contrary notwithstanding.

60. The Supremacy Clause mandates that federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, or where state law conflicts or interferes with federal law.

61. HB 2023 is void in its entirety because it attempts to prohibit and criminalize conduct that federal law expressly permits. *See* 18 U.S.C. § 1696(c) ("This chapter shall not prohibit the conveyance or transmission of letters or packets by private hands without compensation, or by special messenger employed for the particular

1  occasion only."); 39 CFR § 310.3(c) ("The sending or carrying of letters without
2  compensation is permitted.").

3       62.    HB 2023 conflicts with federal law and policy, attempts to legislate in a
4  field occupied by the federal government, and imposes burdens and penalties not
5  authorized by and contrary to federal law, each in violation of the Supremacy Clause.
6  *See Arizona v. United States*, 567 U.S. 387 (2012) (concluding that federal law
7  preempted an Arizona statute where "Congress decided it would be inappropriate to
8  impose criminal penalties" on the conduct criminalized by the state statute).

## COUNT TWO

### (First Amendment; 42 U.S.C. § 1983)

11       63.    Plaintiff realleges and incorporates by reference all prior paragraphs of
12  this Complaint as though fully set forth herein.

13       64.    The First Amendment to the U.S. Constitution provides that "Congress
14  shall make no law . . . abridging the freedom of speech . . . ."  The First Amendment's
15  guarantees are applied to the States through the Fourteenth Amendment.

16       65.    "It is axiomatic that restrictions upon the mail system implicate the First
17  Amendment." *Currier v. Potter*, 379 F.3d 716, 727 (9th Cir. 2004); *see also Blount v.*
18  *Rizzi*, 400 U.S. 410, 416 (1971) ("The United States may give up the Post Office when
19  it sees fit, but while it carries it on the use of the mails is almost as much a part of free
20  speech as the right to use our tongues . . . ."); *Bolger v. Youngs Drug Prods. Corp.*, 463
21  U.S. 60, 80 (1983) (Rehnquist, J., concurring in the judgment) ("A prohibition on the
22  use of the mails is a significant restriction of First Amendment rights.").

23       66.    HB 2023's prohibition against private mail carriage is an unlawful
24  restraint on protected speech.

25       67.    Plaintiff seeks to engage in the private carriage of mail-in ballots in the
26  2018 Primary Election, but because the Defendant has threatened her and others with
27  criminal sanctions for doing so, she credibly fears engaging in such conduct.

28

68.     Although HB 2023 may not discriminate among viewpoints, HB 2023 constitutes a content-based speech restriction because it provides restrictions on the delivery of mail based on the mail's subject matter—ballots.

### COUNT THREE

**(Excessive Vagueness in Violation of the Due Process Clause of the Fourteenth Amendment; 42 U.S.C. § 1983)**

69.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

70.     The Due Process Clause of the Fourteenth Amendment provides that "No state shall . . . deprive any person of life, liberty, or property, without due process of law." It is "a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

71.     The criminal penalties in HB 2023 are triggered if a person is deemed to have "collected" an early ballot of another person. However, HB 2023 confusingly states that, "any [] person who is allowed by law to transmit United States mail is deemed not to have collected an early ballot if the … person is engaged in official duties." However, the phrase "allowed by law to transmit United States mail" is undefined and vague. In addition, the phrase, "engaged in official duties" is inherently unclear, as the phrase can be understood to apply only to government employees or officials in the scope of their employment. Indeed, under federal law, **all** persons are authorized to deliver mail as long as it is done so without compensation.

72.     Because HB 2023 imposes significant criminal penalties on individuals that collect and deliver early ballots in violation of the statute, the vagaries of the phrase "any [] person who is allowed by law to transmit United States mail is deemed not to have collected an early ballot if the … person is engaged in official duties" present particularly grave dangers. A person that makes an honest and reasonable determination that she is permitted to deliver a piece of mail under federal law may

1  nevertheless face a presumptive sentence of one year of incarceration and a fine of up to
2  $150,000 plus surcharges.  Those dangers are compounded by the inherent vagueness of
3  the phrase "engaged in official duties," which invites arbitrary or discriminatory
4  enforcement of HB 2023 by the Attorney General.  Moreover, the vagueness implicates
5  fundamental free speech concerns under the First Amendment.

6      73.    HB 2023 is therefore void for vagueness in violation of the Due Process
7  Clause.

## PRAYER FOR RELIEF

9      WHEREFORE, in light of the foregoing facts and arguments, Plaintiff requests
10 that the Court:

11     A.    Assume jurisdiction over this matter;

12     B.    Declare that HB 2023 is unconstitutional in its entirety;

13     C.    Preliminarily and permanently enjoin Defendant, his officers, agents,
14 servants, employees, and attorneys, and those officials in active concert or participation
15 with him from implementing or enforcing HB 2023;

16     D.    Award Plaintiff's costs of suit, reasonable attorneys' fees, and other
17 expenses pursuant to 42 U.S.C. § 1988; and

18     E.    Grant such other relief as the Court may deem appropriate.

20     Respectfully submitted this 3rd day of July, 2018.

**COPPERSMITH BROCKELMAN PLC**

By  s/ Roopali H. Desai
    Roopali H. Desai

**SCHARFF PLC**

By  s/ Spencer G. Scharff
    Spencer G. Scharff

*Attorneys for Plaintiff*