Mark Brnovich
*Attorney General*
Firm Bar No. 14000

Kara M. Karlson (029407)
Joseph E. La Rue (031348)
*Assistant Attorneys General*
Andrew G. Pappas (034432)
*Assistant Solicitor General*
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-5025
Fax:  (602) 542-4085
kara.karlson@azag.gov
joseph.larue@azag.gov
andrew.pappas@azag.gov

Attorney for Defendant
Attorney General Mark Brnovich

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rivko Knox,<br><br>             Plaintiff,<br><br>vs.<br><br>Mark Brnovich, in his official capacity as Arizona Attorney General,<br><br>             Defendants. | Case No: 2:18-cv-02089-DLR<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION** |

# TABLE OF CONTENTS

Table of Authorities..........................................................................................ii

Introduction ...................................................................................................... 1

Legal Standard ................................................................................................. 3

Argument .......................................................................................................... 3

    I.     Plaintiff Has Not Suffered Any Cognizable Injury........................... 3

          A.    H.B. 2023 Is Not Preempted by Federal Law.......................... 3

               1.    The Federal Mail Laws Do Not Conflict with H.B. 2023 .............. 4

               2.    The Federal Mail Laws Do Not Occupy the Relevant Field........... 6

          B.    H.B. 2023 Does Not Infringe the First Amendment.............................11

          C.    H.B. 2023 Is Not Void For Vagueness ..................................... 11

          D.    Laches and the Purcell Doctrine Bar Plaintiff's Claims ........................ 13

    II.    The Balance of Hardships and Public Interest Analysis Tips Sharply
          in Defendant's Favor ....................................................................... 13

    III.   An Injunction Would Disserve the Public Interest ........................ 14

Conclusion ..................................................................................................... 16

i

**Cases**

*Aguayo v. US Bank*,
  653 F.3d 912 (9th Cir. 2011) .......................................................................5

*Am. Eagle Exp., Inc. v. Pa. Pub. Util. Comm'n*,
  No. 86-6594, 1986 WL 14203 (E.D. Pa. Dec. 11, 1986) ................................5 n.2

*Arizona v. United States*,
  567 U.S. 387 (2012) ................................................................................4, 6

*Arizona Libertarian Party v. Reagan*,
  189 F. Supp. 3d 920 (D. Ariz. 2016) ...........................................................13, 14

*Blount v. Rizzi*, 400 U.S. 410 (1971) ...............................................................11

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) ...................................11

*Burdick v. Takushi*,
  504 U.S. 428 (1992) .....................................................................................7

*Clingman v. Beaver*,
  544 U.S. 581 (2005) .....................................................................................2

*Commonwealth v. Nat'l Fed'n of the Blind*,
  335 A.2d 832 (Pa. Commw. Ct. 1975) .........................................................9 n.9

*Commonwealth v. Telecom Directories, Inc.*,
  806 S.W.2d 638 (Ky. 1991)..........................................................................9 n.7

*Consigned Sales Co., Inc. v. Sanders*,
  543 F. Supp. 230 (W.D. Okla. 1982) ...........................................................9 n.12

*Conte & Co., Inc. v. Stephan*,
  713 F. Supp. 1382 (D. Kan. 1989) ...............................................................9 n.7

*Currier v. Potter*,
  379 F.3d 716 (9th Cir. 2004) .......................................................................11

*Democratic Nat'l Comm. v. Reagan*, No. 16-cv-1065,
  2018 WL 2191664 (D. Ariz. May 10, 2018)......................................1, 2, 11, 12, 15

*Desertrain v. City of Los Angeles*,
    754 F.3d 1147 (9th Cir. 2014) ................................................................ 12

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) ........................................................................... 3

*Fulani v. Hogsett*,
    917 F.2d 1028 (7th Cir. 1990) ........................................................... 14

*Gomez v. Ursone*,
    13 Conn. Supp. 359 (Com. Pl. 1945) ............................................... 8 n.6

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ............................................................ 13

*Lathan v. Brinegar*,
    506 F.2d 677 (9th Cir. 1974) ............................................................ 13

*Middletown Twp. v. N/E Reg'l Office*,
    601 F. Supp. 125 (D.N.J. 1985) ...................................................... 8 n.4

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ........................................................................... 3

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
    762 F.2d 1374 (9th Cir. 1985) ........................................................... 14

*Papachristou v. City of Jacksonville*,
    405 U.S. 156 (1972) ..................................................................... 11-12

*Potrero Hills Landfill, Inc. v. Cty. of Solano*,
    657 F.3d 876 (9th Cir. 2011) ............................................................ 16

*Puente Ariz. v. Arpaio*,
    821 F.3d 1098 (9th Cir. 2016) ......................................... 3, 4, 5, 6, 7, 8

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ....................................................................... 14, 15

*Qualkinbush v. Skubisz*,
    826 N.E.2d 1181 (Ill. Ct. App. 2005) ............................................. 10 n.13

*Ray v. Texas*,
    No. 06-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ................ 10 n.13

*Roth v. United States*,
 354 U.S. 476 (1957) ...................................................................................9

*Ry. Mail Ass'n v. Corsi*,
 326 U.S. 88 (1945) .....................................................................................8

*Short v. Brown*,
 --- F.3d ----, 2018 WL 3077070 (9th Cir. 2018) .......................................7

*Smiley v. Holm*,
 285 U.S. 355 (1932) ...................................................................................7

*State v. McHorse*,
 517 P.2d 75 (N.M. Ct. App. 1973) .......................................................9 n.11

*State v. Reader's Digest Ass'n, Inc.*,
 527 S.W.2d 355 (Mo. 1975) ...............................................................9 n.10

*Syndicated Pub'ns v. Montgomery Cty.*,
 921 F. Supp. 1442 (D. Md. 1996) ..........................................................9 n.8

*Timmons v. Twin Cities Area New Party*,
 520 U.S. 351 (1997) .................................................................................16

*United States v. O'Brien*,
 391 U.S. 367 (1968) .................................................................................11

*United States v. City of Pittsburg, Cal.*,
 661 F.2d 783 (9th Cir. 1981) ..................................................................8 n.5

*United States v. Salerno*,
 481 U.S. 739 (1987) ...........................................................................4, 5, 8

*U.S. Postal Serv. v. Town of Greenwich*,
 901 F. Supp. 500 (D. Conn. 1995) .........................................................8 n.3

*U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*,
 453 U.S. 114 (1981) ...................................................................................6

*Wyeth v. Levine*,
 555 U.S. 555 (2009) ...........................................................................3, 6, 7

**Constitutional Provisions**

U.S. Const., art. I § 4, cl. 1 ............................................................. 2, 6-7, 16

**Statutes**

18 U.S.C. § 1696(c) .................................................................... 1, 2, 4, 5

A.R.S. § 13-2308.03 ............................................................................. 9

A.R.S. § 13-3003 ................................................................................. 9

A.R.S. § 13-3004 ................................................................................. 9

A.R.S. § 13-3502 ................................................................................. 9

A.R.S. § 13-4411.01 ............................................................................ 9

A.R.S. § 16-548 .................................................................................. 8

A.R.S. § 16-548(A) ............................................................................. 9

A.R.S. § 16-1005(H) .......................................................................... 12

A.R.S. § 32-235(C) ............................................................................. 9

A.R.S. § 44-1222 ................................................................................ 9

**Other Authority**

39 C.F.R. § 310.3(c) ........................................................................ 1, 4

39 C.F.R. § 111 ................................................................................. 10

Balloting Materials Postage,
    78 Fed. Reg. 25677 ................................................................ 10

USPS Domestic Mail Manual 703.8.0 ................................................ 10

# INTRODUCTION

In May 2018, after a 10-day trial and nearly two years of litigation, this Court rejected the Arizona Democratic Party's claims that H.B. 2023—an Arizona law regulating third-party ballot collection—violates the Voting Rights Act and the First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution. *Democratic Nat'l Comm. v. Reagan*, No. 16-cv-1065, 2018 WL 2191664 (D. Ariz. May 10, 2018) ("*DNC*").[1] Less than two months later, a longtime Democratic Party activist, Plaintiff Rivko Knox, filed this lawsuit seeking to invalidate the same law on some of the same grounds plus a novel preemption theory based on federal government's control of the United States Postal Service. Plaintiff's claims fail.

Plaintiff first alleges that H.B. 2023 "attempts to prohibit and criminalize conduct that federal law expressly permits." Compl., Doc. 1, ¶ 61; *see also* Pl.'s Mot. for Prelim. Inj. of HB 2023 and Mem. in Support, Doc. 2 ("Mot.") at 8-12. But the single federal statute she cites does no such thing. Rather than "expressly permit[ing]" anyone to do anything, that statute merely creates a narrow exception to the Postal Service's otherwise-applicable monopoly over the mail delivery by providing that the *federal* postal laws "*shall not prohibit* the conveyance or transmission of letters or packets by private hands without compensation." 18 U.S.C. § 1696(c) (emphasis added). Only in that sense is "[t]he sending or carrying of letters without compensation … permitted." 39 C.F.R. § 310.3(c). There is no general, freestanding authorization—let alone federally protected right—for individuals to carry any piece of mail (or, in this case, ballots that are not mail) unencumbered by state regulation. Even if early ballots qualified as "letters or packets," H.B. 2023's limitations on who may collect those ballots would not conflict with federal law in any way. Nor do the federal mail laws exclusively occupy the relevant field—the regulation of ballot collection.

---

[1] For the ease of the Court and the parties, the Court's Amended Findings of Fact and Conclusions of Law, Doc. 416, May 10, 2018, is attached as Exhibit 1.

Notably, it does not appear that 18 U.S.C. § 1696(c) has ever been found to preempt *a single* state law *anywhere*—let alone laws at the core of State's authority under the U.S. Constitution. Indeed, the States have "broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *Clingman v. Beaver*, 544 U.S. 581, 586 (2005) (quotation omitted). States' "control" over these processes includes regulation of how absentee ballots are collected. *E.g., DNC*, Doc. 428, at 5 (May 25, 2018) (noting the absence of any "federal statutory right to vote by absentee ballot").

Next, Plaintiff alleges that H.B. 2023 violates the First Amendment. Mot. at 12–13. The thrust of Plaintiff's claim is that H.B. 2023 somehow interferes with the message she would convey by collecting voters' early ballots. Decl. of Rivko Knox, Doc. 1-1, at ¶¶ 13–15; Knox Dep., Ex. 2, at 31:19–32:4. But this Court already concluded—correctly—that H.B. 2023 does not run afoul of the First Amendment, because "there is nothing inherently expressive or communicative about collecting a voter's completed early ballot and delivering it to the proper place." Ex. 1 at 32. That conclusion forecloses Plaintiff's First Amendment claim.

Finally, Plaintiff alleges that H.B. 2023 is void for vagueness. Mot. at 13–14. It is not. In fact, this Court already considered the portion of H.B. 2023 that Plaintiff challenges as vague and had no difficulty understanding its meaning. Ex. 1 at 14 (identifying to whom voters may give their early ballots: "a caregiver, family member, household member, mail carrier, or elections official").

Even if Plaintiff's claims did not fail as a matter of law, they would fail as a matter of equity. Plaintiff knew about H.B. 2023 when it was enacted in 2016—indeed, she testified against its enactment in February of that year. And she admits she had no legally-sufficient justification for the two-year delay in bringing this lawsuit, such that it is appropriate to enjoin H.B. 2023 now, on the eve of an election and after early voting has already begun. This unreasonable delay, coupled with the prejudice that would

result to the State if its election law were enjoined just a few days before the 2018 Primary Election, bars her claims.

Plaintiff Rivko Knox and Defendant Arizona Attorney General Mark Brnovich agree that every eligible voter should be able to exercise the franchise. H.B. 2023 protects that right. Plaintiff's attempt to enjoin H.B. 2023 threatens to diminish the integrity of Arizona's elections. Because Plaintiff's claims fail as a matter of law and equity, this Court should refuse to enter the permanent injunction she seeks.

## LEGAL STANDARD

Plaintiff moved for preliminary injunction but asked the Court to consolidate the hearing with the trial on the merits. Mot. at 1. This Court agreed to do so. Minute Entry, Doc. 10, July 11, 2018. Accordingly, the motion for preliminary injunction is transformed into a motion for permanent injunctive relief.

A plaintiff seeking a permanent injunction "must demonstrate: (1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

## ARGUMENT

### I.     Plaintiff Has Not Suffered Any Cognizable Injury.

#### A.     H.B. 2023 Is Not Preempted by Federal Law.

Plaintiff's Supremacy Clause claim "focuses on field and conflict preemption." Mot. at 9. For both, "the touchstone of [the court's] inquiry is congressional intent." *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) (*citing Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). The court "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Wyeth*, 555 U.S. at 565). This

"presumption against preemption" applies even if a State law "touches on an area of historic federal regulation." *Id.* & n.5. "[O]nly if Congress's intent to preempt the challenged statute is 'clear and manifest' may [a court] deem the statute preempted." *Id.* And because Plaintiff's preemption claim is a facial challenge, she "must show that 'no set of circumstances exists under which [H.B. 2023] would be valid.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

### 1. The Federal Mail Laws Do Not Conflict with H.B. 2023.

No federal law conflicts with H.B. 2023, and certainly not the "Private-Carriage Exception" that Plaintiff cites. "Conflict preemption occurs where (1) it is impossible to comply with both federal and state law, or (2) where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Puente*, 821 F.3d at 1103 (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Neither circumstance is present here.

Plaintiff argues that H.B. 2023 conflicts with 18 U.S.C. § 1696(c), which she claims "expressly permits the private carriage of mail without compensation." Mot. at 2. Plaintiff is mistaken: Section 1696(c) does nothing of the sort. The statute provides in pertinent part: "*This chapter* shall not prohibit the conveyance or transmission of letters or packets by private hands without compensation[.]" 18 U.S.C. § 1696(c) (emphasis added). The meaning of this language is clear: the laws codified in Chapter 83, which regulate the United States Postal Service and provide federal criminal penalties for offenses related to the mail service, cannot be used to prohibit private citizens from delivering the letters and packets free-of-charge.

Section 1696(c) is thus an *exception* to the general federal rule that the private carriage of mail is illegal, as Plaintiff herself acknowledges. Mot. at 10; *see also* 18 U.S.C. § 1696 (prohibiting the private carriage of the mail and providing criminal sanctions for violations). Thus, when the implementing regulation says that "[t]he sending or carrying of letters without compensation is permitted," 39 C.F.R. § 310.3(c), it uses "permitted" only in the sense of not being subject to the general, federal ban.

Nothing in Section 1696(c) creates an affirmative right for individuals to collect anything, let alone other voters' early ballots that have never been submitted to the Postal Service in the first place and are not required to be submitted by mail. Because Section 1696(c) does not create an express right to deliver mail free-of-charge, but merely exempts citizens from federal penalties that otherwise would apply to the private carriage of mail, H.B. 2023 does not "directly conflict[]" with Section 1696(c) as Plaintiff claims. Mot. at 11.

Significantly, Plaintiff does not argue that compliance with both H.B. 2023 and Section 1696(c) is "a physical impossibility." Mot. at 10 (quoting *Aguayo v. US Bank*, 653 F.3d 912, 918 (9th Cir. 2011)). She cannot do so, because compliance with both laws is not only possible but commonplace. Indeed, whenever someone complies with H.B. 2023, he also complies with Section 1696(c). Defendant cannot think of any scenario when compliance with H.B. 2023 would violate the federal statute, nor could Defendant find a single case in any court holding that Section 1696(c) preempts any state law.[2]

The ease of complying with both laws highlights another flaw in Plaintiff's case: her facial challenge to H.B. 2023 must fail unless there is "no set of circumstances" in which the state provision could be applied. *Puente*, 821 F.3d at 1104 (quoting *Salerno*, 481 U.S. at 746). H.B. 2023 is lawful in all circumstances. But at a minimum, Plaintiff's tenuous preemption theory is not implicated when a family member, caregiver, *or postal worker* collects ballots, all of which H.B. 2023 expressly allows.

Plaintiff's Supremacy Clause claim also fails under the alternative form of conflict preemption—*i.e.*, that H.B. 2023 "stands as an obstacle to the accomplishment

---

[2] One court, in an unpublished decision, considered whether the private carrier statutes *as a whole*, combined with other statutes and regulations, preempt state regulation of private courier services and indicated that they might. *Am. Eagle Exp., Inc. v. Pa. Pub. Util. Comm'n*, No. 86-6594, 1986 WL 14203, at *1 (E.D. Pa. Dec. 11, 1986). But the court gave no reasons for that "initial reaction" and ultimately abstained from deciding that distinct question. *Id.*

and execution of the full purposes and objectives of Congress." *Puente*, 821 F.3d at 1103. In enacting the Postal Act of 1845, Congress's purpose was to "prohibit[] competition in letter mail." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 122 (1981). H.B. 2023—which bans some private individuals from collecting or and possessing another voter's early ballot but explicitly allows U.S. Postal workers to collect and possess them—does not stand in the way of Congress's purpose. Even under Plaintiff's interpretation of the Section 1696(c), H.B. 2023 does not interfere with Congress's purpose. *See* Mot. at 4 (suggesting that Section 1696(c) "was designed to ensure that private carriage [of mail] is not undertaken 'for hire or reward.'"). Nothing about H.B. 2023 stands as an "obstacle" to Congress's goal of preventing private persons from collecting mail for pay, nor does it "interfere with [some] careful balance struck by Congress" on this issue. *Arizona*, 567 U.S. at 204.

Preemption cases ask whether Congress intended to oust state law. *Wyeth*, 555 U.S. at 565. Where the state law concerns a historic police power like ballot regulations, the threshold is high: it must be the "clear and manifest" intent of Congress to eliminate state regulation. *Id.* Congress has left the regulation of ballot handling to the States or, at a minimum, has not clearly and manifestly evinced an intent to prevent regulations like H.B. 2023. Accordingly, H.B. 2023 is not barred by conflict preemption.

### 2. The Federal Mail Laws Do Not Occupy the Relevant Field.

Plaintiff's field preemption theory based on the federal mail laws also fails. "A law is field preempted where (1) the 'regulatory framework is so pervasive' that there is no room for state regulation, or (2) where the 'federal interest [is] so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Puente*, 821 F.3d at 1103 (quoting *Arizona*, 567 U.S. at 399).

The relevant field for evaluating H.B. 2023 is ballot handling, and the Constitution explicitly assigns the States the power to regulate elections issues like this one. Under the Constitution's Elections Clause, "[t]he Times, Places and Manner of holding Elections for Senators and Representatives shall be prescribed in each State by

the Legislature thereof," unless Congress provides otherwise. U.S. Const., art. I § 4, cl. 1. "[T]he Court therefore has recognized that States retain the power to regulate their own elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). "And states retain broad authority to structure elections" generally, *Short v. Brown*, --- F.3d ----, 2018 WL 3077070, at *3 (9th Cir. June 8, 2018), including authority over "supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns," *Smiley v. Holm*, 285 U.S. 355, 366 (1932). Again, because elections issues like ballot handling are committed to the States and "an area of historic state power," Plaintiff can overcome the "presumption against preemption" only by establishing that it was the "'clear and manifest purpose of Congress'" to preempt a State's ballot-handling law like H.B. 2023. *Puente*, 821 F.3d at 1104 (quoting *Wyeth*, 555 U.S. at 565). Plaintiff has not even attempted to do so.

That H.B. 2023 may sometimes have "effects in" or "touch[] on an area of historic federal regulation"—the mail—does not change the analysis. *Puente*, 821 F.3d at 1104 & n.5. In *Puente*, Arizona's identity-theft laws "[had] effects in the area of immigration," but because "the text of the laws regulate for the health and safety of the people of Arizona," the Ninth Circuit held that they "regulate[d] in an area of historic state power" and thus the "presumption against preemption" applied. *Id.* at 1104. Similarly in *Wyeth*, "[t]he Supreme Court . . . applied the presumption against preemption even though the state tort claim at issue in that case touched on" drug-labeling, "an area of historic federal regulation." *Id.* n.5 (citing *Wyeth*, 555 U.S. at 565 n.3). Here, to the extent that H.B. 2023 touches on such an area at all, it does so only incidentally; its primary effects are on ballot handling, an area of historic and constitutional state concern. And Plaintiff cannot show that Congress clearly and manifestly intended to preempt H.B. 2023 "given [its] practical effect." *Id.* at 1106.

As noted, Plaintiff's challenge is a *facial* one. To prevail, Plaintiff "must show that 'no set of circumstances exists under which [H.B. 2023] would be valid[]'"—that is,

that the law is invalid in all its applications. *Puente*, 821 F.3d at 1104 (quoting *Salerno*, 481 U.S. at 746). Plaintiff cannot possibly make this showing. The heart of Plaintiff's argument is that "once sealed in an envelope with pre-paid postage, a voted early ballot *becomes* a piece of mail," Pl.'s Mot. at 2 (emphasis added), and so any State regulation of the ballot must be preempted by the federal Postal Act. But to be returned, *every* early ballot in Arizona must be sealed in the prepaid-postage envelope provided, regardless whether it is "delivered or mailed to the county recorder" or other elections official "or deposited by the voter or the voter's agent at any polling place." A.R.S. § 16-548. It cannot be the case that an early ballot that a voter or his household member, family member, or caregiver hand-delivers to the county recorder's office is transformed into a piece of mail simply because the voter sealed it in the envelope that the law requires. Nor can it be true that something *is* mail merely because it *could be mailed*. Because H.B. 2023's limitations on ballot handling sometimes do not implicate the mail at all, H.B. 2023 cannot possibly be preempted by the federal postal laws in all its applications. Plaintiff's facial field-preemption theory claim for this reason alone.

More generally, federal "postal mail" regulations do not preempt all state laws that affect the mail. Congress has shown no such intent. Instead, only those state laws that "involve[] a direct, physical interference with federal activities under the postal power or some direct, immediate burden on the performance of the postal functions" are preempted. *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 96 (1945). Thus, courts have exempted the Postal Service from compliance with state or local building codes or permit fees,[3] zoning regulations,[4] lawn-crossing ordinances,[5] or mailbox regulations[6] *that actually interfered* with the Postal Service's operations. But courts have routinely

---

[3] *U.S. Postal Serv. v. Town of Greenwich*, 901 F. Supp. 500, 505 (D. Conn. 1995).

[4] *Middletown Twp. v. N/E Reg'l Office*, 601 F. Supp. 125, 127–28 (D.N.J. 1985).

[5] *United States v. City of Pittsburg, Cal.*, 661 F.2d 783, 785–86 (9th Cir. 1981).

[6] *Gomez v. Ursone*, 13 Conn. Supp. 359, 363 (Com. Pl. 1945).

8

upheld other laws that did not, even where they involved mailed materials. In *Roth v. United States*, 354 U.S. 476 (1957), for example, the Supreme Court rejected a postal-preemption challenge to a California obscenity statute, where the law "in no way impose[d] a burden or interfere[d] with the federal postal functions." *Id.* at 493–94. Courts have rejected similar challenges to state consumer-protection,[7] deceptive-trade-practice,[8] charitable-funds-solicitation,[9] lottery,[10] drug-distribution,[11] and mail-order fireworks laws,[12] among others, all of which involved state regulation of mailed materials but did not interfere with or burden the Postal Service's work.

Arizona has many such statutes on the books. To take a few examples, State law forbids (under specified circumstances) opening another person's mail without authority, A.R.S. § 13-3003, sending a threatening or anonymous letter, *id.* § 13-3004, sending or causing obscene items to be sent, *id.* § 13-3502, "sending … a simulated infectious biological agent," *id.* § 13-2308.03, the state department of corrections' forwarding a defendant's mail to a victim, *id.* § 13-4411.01, and, relatedly, an inmate's sending mail to the victim of the offense for which he was convicted, *id.* § 32-235(C). Arizona law also regulates the "delivery by mail or common carrier" of "unsolicited goods." A.R.S. § 44-1222. More to the point, Arizona regulates (1) the envelope in which every early ballot must be returned, whether by mail or hand-delivery; and (2) the day and time it must be received in order to be counted. *Id.* § 16-548(A). Plaintiff cannot explain how any of these laws would survive under her postal-preemption theory. But *none* of them has been held to be preempted, and for good reason: like H.B. 2023, they in no way

---

[7] *Conte & Co., Inc. v. Stephan*, 713 F. Supp. 1382, 1384–87 (D. Kan. 1989); *Commonwealth v. Telecom Directories, Inc.*, 806 S.W.2d 638, 641–42 (Ky. 1991).

[8] *Syndicated Pub'ns v. Montgomery Cty.*, 921 F. Supp. 1442, 1447–48 (D. Md. 1996).

[9] *Commonwealth v. Nat'l Fed'n of the Blind*, 335 A.2d 832, 838 (Pa. Commw. Ct. 1975).

[10] *State v. Reader's Digest Ass'n, Inc.*, 527 S.W.2d 355, 361–62 (Mo. 1975).

[11] *State v. McHorse*, 517 P.2d 75, 79–80 (N.M. Ct. App. 1973).

[12] *Consigned Sales Co., Inc. v. Sanders*, 543 F. Supp. 230, 233 (W.D. Okla. 1982).

interfere with or obstruct the Postal Service's operations.

So far as Defendant knows, no court has held that the federal mail laws preempt a state election law.[13] That is because there is no evidence whatever that Congress intended for the postal laws to preempt State election laws, and the two largely have nothing to do with each other. Even Plaintiff does not argue otherwise. At most, she argues that "the Postal Service has asserted its authority over the transmission of 'Balloting Materials.'" Mot. at 12 (citing USPS Domestic Mail Manual 703.8.0; Balloting Materials Postage, 78 Fed. Reg. 25677 (codified at 39 C.F.R. § 111)). But that "assert[ion] of authority" is limited to things like postage, labeling, and postcard size for balloting and registration materials sent through the mail. That is hardly an occupation of the field related to the handling of early ballots.

Federal law does not preempt state regulations concerning the handling of absentee ballots that might be sent through the mail. For starters, that field would encompass many ballots that are placed in Arizona's mandatory ballot envelope but never enter the mail. For those that do enter the mail, H.B. 2023 does not affect the Postal Service's operations to the slightest degree. Plaintiff offers no reason to think that Congress intended to wipe away such a wide swath of state elections regulations, let alone that it did so clearly and manifestly. Plaintiff's field preemption claims fail.

### B. H.B. 2023 Does Not Infringe the First Amendment.

Next, Plaintiff argues that H.B. 2023's ban on collecting ballots is actually a content-based speech restriction. Mot. at 13. Not so. As this Court explained in *DNC*,

---

[13] Other preemption challenges to ballot-handling laws have failed. In *Qualkinbush v. Skubisz*, 826 N.E.2d 1181 (Ill. Ct. App. 2005), an Illinois court rejected claims that the Voting Rights Act and Americans with Disabilities Act preempted an Illinois statute making it generally unlawful for third parties "to take the ballot and ballot envelope of a voter for deposit into the mail." *Id.* at 1192–94. And in *Ray v. Texas*, No. 06-385, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008), the court rejected a claim that the VRA preempted "[a] Texas statute mak[ing] it a criminal offense for any person to sign as a witness for more than one early voting ballot application, subject to limited exceptions."

"[c]onduct, such as collecting a ballot, is not 'speech' for purposes of the First Amendment simply because 'the person engaging in the conduct intends thereby to express an idea.'" Ex. 1 at 32 (*quoting United States. v. O'Brien*, 391 U.S. 367, 376 (1968)). To the contrary, this Court held that "there is nothing inherently expressive or communicative about collecting a voter's completed early ballot and delivering it to the proper place." *Id*. at 32–33. Because H.B. 2023 does not regulate speech at all, it cannot be a content-based restriction on speech.

Plaintiff attempts to avoid this obvious conclusion by arguing that because "HB 2023 constitutes a regulation on the use and delivery of the mail" (it does not), "it constitutes a speech restriction." Mot. at 12. But each of the three cases she cites concerns restrictions on a person's ability to send or receive *her own* mail. Of course those types of restrictions implicate the First Amendment. So, in *Blount v. Rizzi*, 400 U.S. 410 (1971) and *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983), the Supreme Court struck mail regulations that prevented publishers and advertisers from using the mail service to mail their own publications and advertisements. In *Currier v. Potter*, 379 F.3d 716 (9th Cir. 2004), the court considered whether the government could restrict where homeless people could receive mail addressed to them but lacking a street address (it could). None of these cases considered whether one has an unfettered right under the First Amendment to supply a non-expressive service to third parties in the form of collecting and delivering someone else's early ballot. They do not, as this Court held in *DNC*. Plaintiff has not suffered a cognizable First Amendment injury as a result of H.B. 2023.

### C. H.B. 2023 Is Not Void For Vagueness.

The void-for-vagueness doctrine requires that "a person of ordinary intelligence" have "fair notice that [her] contemplated conduct is prohibited by statute[.]" *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). A statute is unconstitutionally vague only when "it leaves the public uncertain as to the conduct it prohibits[.]" *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1155 (9th Cir. 2014)

(citation omitted).

H.B. 2023 provides crystal-clear notice about what it allows and forbids. As this Court explained in *DNC*, H.B. 2023 allows voters to "entrust a caregiver, family member, household member, mail carrier, or elections official to return their early ballots, but may not entrust other, unauthorized third parties to do so." Ex. 1 at 14. This summary of H.B. 2023 is not only plainly correct, but it resolves any uncertainty that might ever have existed about its scope.

Plaintiff nonetheless claims she is confused by H.B. 2023's exemption for "any person who is allowed by law to transmit United States mail" when that person is "engaged in official duties." Mot. at 13 (citing A.R.S. § 16-1005(H). Plaintiff contends that federal law authorizes *her* to transmit U.S. mail as long as she does so for free, "but it is not clear if such activity would qualify as 'official duties,'" Mot. at 14; *see also* Doc. 1 ¶ 10; Doc. 1-1 ¶ 26, even though she is not employed by the Postal Service and does not purport to be engaged in any "official" business for it. This is nonsense.

As a threshold matter, Plaintiff flatly contradicts her own claim that she is "unsure" whether H.B. 2023's exemption applies to her. Doc. 1-1 ¶ 26. Her declaration states unequivocally: "I understand that since HB 2023 went into effect, I am prohibited from collecting and delivering another person's early ballot." Doc. 1-1 ¶ 10. For this reason, she is "very careful not to offer to deliver or accept for delivery another person's ballot, even if they ask for [her assistance]." *Id.* Clearly Plaintiff understands what H.B. 2023 means.

In any event, as explained above, the premise of Plaintiff's argument is wrong—the federal postal laws do not give her an affirmative right to transmit anyone's mail. *See supra* at 3-10. But even if they did, Plaintiff—a party volunteer—offers no clue about what "official duties" she could possibly be engaged in. Surely Plaintiff does not mean to suggest that she would be engaged in a *mail carrier*'s official duties if she collected a voter's ballot for delivery.

The void-for-vagueness doctrine does not require that laws be written with such

amazing precision that no one could possibly suggest a fanciful interpretation, as Plaintiff has done, that might leave her conduct unregulated. Nor does it require the legislature to define each and every word used in a statute. The doctrine only requires that laws have sufficient specificity that people have fair notice as to what conduct is unlawful. H.B. 2023 provides such notice. It therefore is not void for vagueness.

### D. Laches and the *Purcell* Doctrine Bar Plaintiff's Claims.

Plaintiff's claims are also barred by the doctrine of laches. "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). "In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice." *Ariz. Libertarian Party v. Reagan*, 189 F. Supp. 3d 920, 922–23 (D. Ariz. 2016). "The Court considers the justification for the delay, the extent of Plaintiff's advance knowledge of the basis for the challenge, and whether Plaintiff exercised diligence in preparing and advancing [her] case." *Id*. at 923. The Court also considers the prejudice to the party asserting laches. *Lathan v. Brinegar*, 506 F.2d 677, 691–92 (9th Cir. 1974). These considerations in this case lead to the conclusion that Plaintiff's claims are barred by laches.

Plaintiff has known about H.B. 2023 since early 2016, when it was being debated in the legislature. In fact, Plaintiff testified against H.B. 2023 in February, 2016. Knox Dep., Ex. 2, at 28:25—30:6, 53:1–5. Plaintiff knew that, once passed, H.B. 2023 prohibited her from collecting ballots. Decl. of Rivko Knox, Doc. 1-1, at ¶ 10. Furthermore, Plaintiff is not someone who only recently decided that she wanted to collect ballots, and so can be excused for not bringing her lawsuit earlier. Rather, Plaintiff asserts that she collected at least one ballot prior to the 2016 election cycle, and always wanted to collect ballots during her canvassing activities. *Id*. ¶ 8; Knox Dep., Ex. 2, at 17:18—18:11. Plaintiff wanted to collect ballots during the April, 2018, Special

Election, but knew she could not because of H.B. 2023.  Decl. of Rivko Knox, Doc. 1-1, at ¶¶ 11-12.

If Plaintiff believed that she was suffering irreparable harm, she could have brought her lawsuit in 2016, or 2017, or even early 2018.  But she did not, waiting instead for the 2018 election season to begin in earnest.  Plaintiff offers only the flimsiest of excuses for the delay—she "got busy doing other things."  Knox Dep., Ex. 2, at 53:6-13.  That thoroughly non-specific and feeble excuse is not one the courts of equity will accept.  Plaintiff had "advance[d] knowledge of the basis for the challenge," but did not "exercise[] diligence in preparing and advancing [her] case." *Ariz. Libertarian Party*, 189 F. Supp. 3d at 923.  Moreover, Plaintiff's delay also undermines her claim of irreparable injury.  *See Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) ("The candidate's and party's claims to be respectively a serious candidate and a serious party with a serious injury become less credible by their having slept on their rights."); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.").

Plaintiff's delay also prejudices the State severely, forcing the State to litigate this matter—and risk the enjoining of an election law—on the eve of an election.  The Purcell Doctrine soundly admonishes courts against enjoining election laws close in time to an election.  *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curium).  In that case, the Supreme Court unanimously explained that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id*. at 4–5. That risk increases as the election draws nearer. *Id*. at 5. The Court in *Purcell* stayed an injunction that issued thirty-three days before the November, 2006 General Election.  *Id*. at 3.

Here, even with the expedited schedule that Plaintiff requested, argument on this motion will not occur until August 10.  Thus, even if the Court rules from the bench, its decision will be a mere eighteen days before the August 28, 2018 Primary Election and

ten days after the first round of early ballots have been mailed. This Court should not enjoin an election law so close in time to the election, when—but for Plaintiff's delay, which is defended by only the weakest of excuses—Plaintiff's claims could have been decided long ago.

The Court in *Purcell* also cautioned against "conflicting orders" that issue on the eve of elections. *Purcell*, 549 U.S. at 4–5. There, the district court denied a preliminary injunction against a challenged election law on September 11, but the Ninth Circuit enjoined enforcement of the law on October 5. *Id.* at 3. The Supreme Court said that such "conflicting orders[] can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* Less than three months ago, this Court upheld H.B. 2023 in the *DNC* litigation. Were this Court to now enjoin H.B. 2023, there would be "conflicting orders" that would confuse voters. This Court should not create that conflict.

## II. The Balance of Hardships and Public Interest Analysis Tip Sharply in Defendant's Favor.

Because Plaintiff's claims fail as a matter of law, Plaintiff cannot be harmed if H.B. 2023 is not enjoined. As this Court has already explained in the *DNC* litigation, the State has two important interests advanced by H.B. 2023: preventing absentee voter fraud and unintended loss of ballots by ballot collectors, and improving and maintaining public confidence in election integrity. Ex. 1 at 33. This Court correctly recognized that these are "facially important state regulatory interests." *Id.* at 33–34 (*citing Purcell*, 549 U.S. at 4). It also noted that absentee voting "presents a great opportunity for fraud." *Id.* at 36. Deterring such fraud and bringing the security of absentee voting closer to the security of in-person voting is an important interest of the State that would be compromised if Plaintiff's injunction issued. *Id.*

More generally, the State would be harmed by an injunction because Arizona has an important state interest in enforcing its laws. *Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 883 (9th Cir. 2011) (stating proposition and collecting cases).

This interest is heightened in the election context, because the federal Constitution gives states the authority and responsibility to determine the times, places, and manner of elections, U.S. Const. art. I, § 4, cl. 1, including the regulation of "parties, elections, and ballots." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). The balance of hardships thus tips sharply in Defendant's favor.

For similar reasons, Plaintiff cannot demonstrate that a permanent injunction against enforcement of H.B. 2023 is in the public interest. H.B. 2023 is a prophylactic measure designed to reduce the potential for absentee voter fraud as well as the potential that ballot collectors will inadvertently lose collected ballots. The public interest would therefore be disserved by an injunction.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion for a Permanent Injunction and enter judgment against Plaintiff and for Defendant on all claims.

Respectfully submitted this 26th day of July, 2018.

Mark Brnovich
Attorney General


 s/ Joseph E. La Rue
Kara M. Karlson
Joseph E. La Rue
*Assistant Attorneys General*
Andrew Pappas
*Assistant Solicitor General*

Attorneys for Defendant Arizona
Attorney General Mark Brnovich

**CERTIFICATE OF SERVICE**

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, this 26th day of July, 2018:

Spencer G. Scharff
Scharff PLC
502 W. Roosevelt St.
Phoenix, AZ 85003
spencer@scharffplc.com

Roopali H. Desai
Coppersmith Brockelman PLC
2800 N. Central Ave., Ste. 1200
Phoenix, AZ 85004
rdesai@cblawyers.com

*Attorneys for Plaintiff*

  s/ Joseph E. La Rue