1  Spencer G. Scharff (028946)
   **SCHARFF PLC**
2  502 West Roosevelt Street
3  Phoenix, Arizona 85003
   T: (602) 739-4417
4  spencer@scharffplc.com
5
   Roopali H. Desai (024295)
6  **COPPERSMITH BROCKELMAN PLC**
   2800 North Central Avenue, Suite 1900
7  Phoenix, Arizona 85004
8  T: (602) 381-5490
   F: (602) 224-6020
9  rdesai@cblawyers.com

10 *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rivko Knox,<br><br>    Plaintiff,<br><br>v.<br><br>Mark Brnovich, in his official capacity as Arizona Attorney General,<br><br>    Defendant. | No. CV-18-2089-PHX-DLR<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**<br><br>[Rule 65(a)(2) Hearing set for August 10, 2018 at 1:45 pm] |

{00381050.1 }

**INTRODUCTION**

Defendant does not dispute that, under 18 U.S.C. § 1696(c), Plaintiff Rivko Knox may deliver mail for another person as long as she is not compensated. Notwithstanding this law, which is part of Congress's comprehensive regulation of the U.S. mail system, Defendant maintains that Arizona House Bill ("HB") 2023 can prohibit Ms. Knox from delivering voters' mail-in ballots. To get around HB 2023's obvious Supremacy Clause problems identified in Plaintiff's Complaint (Doc. 1) and her Motion for Preliminary Injunction (Doc. 2), Defendant engages in medal-worthy mental gymnastics. Specifically, Defendant argues that HB 2023 is not preempted by federal law because: (1) the Private Express Statutes ("PES") do not "expressly permit" persons to deliver mail; (2) mail-in ballots are not "letters or packets" qualifying for "private hands" carriage; (3) the relevant field for analyzing Plaintiff's claim of field preemption is "ballot handling" and not mail; and (4) the PES and HB 2023 can co-exist. Each of Defendant's arguments fails.

First, the PES *expressly* authorizes the carriage of mail by private hands. Second, mail-in ballots fall squarely within the federal definition of "letters." Third, there is no question that the field Congress intended to regulate through the PES was mail delivery, and delivery of mail-in ballots is precisely what HB 2023 seeks to regulate. Fourth, the PES and HB 2023 cannot co-exist because the PES preempt the imposition of state criminal sanctions for the lawful carriage of mail.

Even if HB 2023 is not preempted, it violates the First and Fourteenth Amendments. The right to deliver mail is protected speech under the First Amendment, and HB 2023's restrictions on mail delivery violate Ms. Knox's free speech rights. HB 2023 is also void for vagueness because it includes confusing language about who is permitted to collect and deliver mail-in ballots.

Finally, in an effort to avoid a ruling on the merits, Defendant argues that her claims are barred by laches and the *Purcell* Doctrine. Those defenses do not apply to this case because Plaintiff did not sit on her legal claims, Defendant has not suffered any prejudice, and Defendant had every opportunity to develop his case before the trial on the merits.

Plaintiff respectfully requests that this Court declare HB 2023 unconstitutional. Further, because Plaintiff has demonstrated that she has suffered irreparable injury, no other adequate remedy is available at law, the balance of hardships favors her, and the public interest would not be disserved by a permanent injunction, Plaintiff also asks this Court to permanently enjoin the implementation and enforcement of HB 2023.

## ARGUMENT

### I. All Americans Have the Right to Use the Mail, Including the Right to Carry Letters When Permitted by Federal Law.

Plaintiff's claims are predicated on the fact that every American has the right to use the mail and carry letters pursuant to federal law. Defendant first contends (at 1) that "[t]here is no general, freestanding authorization—let alone federally protected right—for individuals to carry any piece of mail . . . ." Defendant is wrong: The PES authorizes the private carriage of mail. *See* 39 U.S.C. § 601 (codifying the circumstance when "[a] letter may be carried out of the mails"). Even before the PES codified the right to carry letters, courts had long held that U.S. citizens have a substantive right to use the mail. *See U.S. ex rel. Milwaukee Soc. Democratic Pub. Co. v. Burleson*, 255 U.S. 407, 423–24 (1921) (Brandeis, J., dissenting) ("Congress has never deemed it wise, if, indeed, it has considered it constitutional, to interfere with the civil right of using the mail for lawful purposes.").[1] The right to use the mail is so ingrained in the bedrock of our democracy that even prisoners retain some rights to send and receive mail. *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1209 (9th Cir. 2017). As a threshold matter, therefore, this Court should conclude that the PES authorizes Plaintiff to carry mail.

---

[1] *See also* Hearing Before the Subcomm. on the Postal Office and Post Roads, 74 Cong. 12 (1935) (Statement of Matthew F. McGuire of DOJ) (concluding that in passing the Private Carriage Exception, "Congress wanted to give [an individual] authority or the right to send a communication to his friend by private hands."); Hearing Before the Subcomm. on Postal Operations and Services, 96 Cong. 12 (1979) (Statement of Louis A. Cox, USPS's General Counsel) ("You can always take a friend's letter down the street as a friendly gesture without running afoul of the private express statutes.")

**II. Federal Law Preempts HB 2023.**

    **A.    The Delivery of Mail-in Ballots Falls Within the Postal Monopoly.**

Next, Defendant argues that the PES does not preempt HB 2023 because mail-in ballots are not "letters or packets" and, therefore, do not qualify under the Private Carriage Exception. Defendant is wrong again. A mail-in ballot is subject to the Postal Monopoly not "merely because it *could be mailed*," as Defendant suggests (at 8), but because it falls squarely within the definition of a "letter."[2] Congress provided the Postal Service with the power to define letter mail. *See* 39 U.S.C. § 401(2), (10); *USPS v. Brennan*, 574 F.2d 712, 714 (2d Cir. 1978). Federal regulations define a "letter" as "a message directed to a specific person or address and recorded in or on a tangible object," 39 C.F.R. § 310.1(a).[3]

Further, each ballot is composed of paper. 39 C.F.R. § 310.1(a)(1) ("Tangible objects used for letters include, but are not limited to, paper (including paper in sheet or card form)"). Each ballot contains the voter's recorded message, which has a "predetermined significance"—the voter's electoral preferences. *Id*. at § 310.1(a)(2), (4). Finally, each mail-in ballot is directed to a specific address—the voter's respective County Recorder's Office. *Id*. at § 310.1(a)(3) ("A message is directed to a 'specific person or address' when . . . the container in which it is carried . . . is marked for delivery to a specific . . . place"). In sum, a mail-in ballot constitutes a "letter."

    **B.    HB 2023 Is Preempted Under Field Preemption.**

        **1.    The Presumption Against Preemption Does Not Apply.**

Contrary to Defendant's position (at 7), the presumption against preemption does not apply to restrictions on the use of mail. Defendant cites to *Puente* and *Wyeth*, but those cases concerned regulations in an area traditionally within the state's police power—health

---

[2] Plaintiff agrees with Defendant (at 8) that it is not the prepaid postage or the sealed envelope that *alone* transforms a mail-in ballot into letter mail. But, as explained below, such factors only bolster a finding that mail-in ballots are subject to the Postal Monopoly.

[3] This definition has persisted throughout American history. *See, e.g., United States v. Bromley*, 53 U.S. 88, 93–94 (1851) (holding that "[a] letter is a written communication from one person to another; neither external direction, nor sealing, nor envelope, are essential to a letter."); *Nat'l Ass'n of Letter Carriers v. Indep. Postal Sys. of Am.*, 336 F. Supp. 804 (W.D. Okl. 1971) (holding that unsealed printed Christmas cards bearing no personal message were letters within the meaning of the PES).

and safety. *Cf. Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) (concluding that "the laws regulate for the health and safety of the people of Arizona"). HB 2023, however, restricts mail and does not relate to health and safety. Here, like the interstate navigation regulations at issue in *United States v. Locke*, Arizona "has enacted legislation in an area where the federal interest has been manifest since the beginning of our Republic and is now well established," 529 U.S. 89, 99 (2000)—letter delivery. Thus, the presumption against preemption is not applicable here. *See, e.g., In re Korean Air Lines*, 642 F.3d 685, 693 n.6 (9th Cir. 2011) (declining to apply presumption to "an area where there has been a history of significant federal presence, namely navigable airspace."); *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004–05 (9th Cir. 2008) (banking).

Even if the Court accepts the Defendant's argument (at 6) that HB 2023 is not a regulation of mail, but simply an election regulation, the presumption against preemption still would not apply. The regulation of federal elections is not a subject of state police power nor one that is traditionally the province of the states. "Unlike the States' historic police powers, the States' role in regulating congressional elections . . . has always existed subject to the express qualification that it terminates according to federal law." *Ariz. v. ITCA*, 570 U.S. 1, 14–15 (2013) (holding that "the assumption that Congress is reluctant to pre-empt" is inapplicable to election regulations).

### 2. The Comprehensive, Federal Regulations Governing Mail Delivery Preserves the Postal Monopoly and Occupies the Field.

Congress has long understood that in order to preserve the robust, nationwide mail system, it was necessary to protect the Postal Monopoly. It was with that intent in mind that Congress enacted Chapter 83 of Title 18, which represents a comprehensive framework for regulating the delivery of letters—whether carried by postal workers or by "private hands." Federal law, for example, prohibits the desertion of mails, 18 U.S.C. § 1700, the obstruction of correspondence and mails, *id*. at § 1702, the destruction of mail, *id*. at § 1703, and the transportation of persons acting as private carriers, *id*. at § 1697.

1   Although Congress has permitted letters to be carried outside of the mail, *see id*. at
2   §§ 1694 (Carriage of matter out of mail over post routes), 1695 (Carriage of matter out of
3   mail on vessels), 1696 (Private express for letters and packets), these exceptions to the
4   Postal Service's exclusive right to deliver letters represent a necessary exercise of the
5   Postal Monopoly, not its abdication. *See Am. Postal Workers Union, AFL-CIO v. USPS*,
6   891 F.2d 304, 310 (D.C. Cir. 1989), *rev'd on other grounds*, 498 U.S. 517 (1991) (finding
7   that these statues "constitute the linchpin in a statutory scheme concerned with maintaining
8   an effective, financially viable Postal Service"); *United States v. Black*, 569 F.2d 1111,
9   1113 (10th Cir. 1978) (concluding that "the plain intent of the [PES] is that the United
10  States should have a monopoly in the delivery of letters and that the private express
11  statutes were designed to give effect to the Constitutional mandate that Congress
12  established 'Post Offices and Post Roads.'").

13  Notably, Congress vested the Postal Service—not the states—with the discretion to
14  suspend the PES. *See* 39 U.S.C. § 601(b)(3). For example, in 1979, the Postal Service
15  exercised this authority and suspended the PES for the carriage of extremely urgent letters,
16  otherwise known as express mail or overnight service. *See* 44 Fed. Reg. 61,181 (Oct. 24,
17  1979); *see also Cooper v. USPS*, 577 F.3d 479, 485 n.2 (2d Cir. 2009) (UPS and Federal
18  Express "operate pursuant to an exception to the monopoly which allows private carriers to
19  provide services for 'extremely urgent letters.'"). In other words, Congress granted the
20  Postal Service the exclusive license to deliver the mail, and private carriers may operate
21  only when Congress or the Postal Service expressly grants them a limited license to do so.

22  Here, Defendant relies on *Roth* and other similar cases (at 8–9) to support his
23  contention that the PES does not occupy the field. However, in those cases, the state laws
24  did not interfere with the core federal postal functions—regulation of which is entirely
25  reserved by the Federal Government—and, therefore, the court found that the state laws
26  were not preempted.[4] Moreover, the *Roth* Court actually recognized the Postal Power's

---

[4] The Postal Monopoly does *not* preclude all "ballot handling" regulations. It merely precludes states from regulating the *carriage* and *delivery* of mail-in ballots. Thus, it would not necessarily preempt Arizona's other "ballot abuse" laws, i.e. Arizona's

field preemption: "the limits of state regulatory power in relation to the federal mail service involve situations where state regulation involved a direct, physical interference with federal activities under the postal power or some direct, immediate burden on the performance of the postal functions." 354 U.S. 476, 494 (1957)(internal citation omitted).[5]

### C. HB 2023 Conflicts with the Federal Government's Exclusive Power to Regulate the Carriage and Delivery of Letters.

Defendant contends (at 4) that HB 2023 does not conflict with the Private Carriage Exception because the exception merely authorizes the private carriage, but "does not create an express right to deliver mail free-of-charge."[6] The Supreme Court, however, has repeatedly rejected similar arguments against preemption. *See Barnett Bank of Marion Cty. v. Nelson*, 517 U.S. 25 (1996).

In *Barnett Bank*, the Supreme Court analyzed a "Federal Statute [that] authorizes national banks to engage in activities that [a] State Statute expressly forbids." *Id*. at 31. Although the Court noted that the two statutes were not in "irreconcilable conflict," the Court found the state statute preempted because it stood "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*.

*Arizona v. United States*, 567 U.S. 387 (2012), which found certain provisions of SB 1070 preempted, is also instructive. Section 5(C) of SB 1070 made it a state crime to work without federal authorization. *Id*. at 403. In concluding that that provision was preempted, the Court found that Congress enacted "a comprehensive framework," which, by design, did not impose federal criminal sanctions on the employee side. *Id*. at 405.

---

prohibition on (1) marking a ballot with the intent to fix an election, A.R.S. § 16-1005(A), (2) buying or selling a ballot, *id*. at § 16-1005(B) & (C), (3) falsely claiming to be an elections official to solicit a ballot, *id*. at § 16-1005(F).

[5] The other cases cited by Defendant also acknowledge the Postal Power's field preemption. *See, e.g.*, *Conte & Co. v. Stephan*, 713 F. Supp. 1382, 1386 (D. Kan. 1989) ("There is little doubt that the federal statutory scheme for handling, delivering and sorting the mails is comprehensive [thus] the state may not regulate the mail"); *Syndicated Publ'ns, Inc. v. Montgomery Cty.*, 921 F. Supp. 1442, 1448 (D. Md. 1996) ("the federal regulations at issue regulate the mailing of invoice-like solicitations while the County Code prohibits deceptive trade practices").

[6] Ironically, Defendant contends (at 5) that H.B. 2023's exception "expressly allows" family members, caregivers, and postal workers to collect ballots.

1  Thus, the Court concluded that "[a]lthough § 5(C) attempts to achieve one of the same goals as federal law—the deterrence of unlawful employment—it involves a conflict in the method of enforcement" and was therefore preempted. *Id*. at 406.

Just as purposely as Congress limited the scope of the PES coverage to exclude certain private carriers, Arizona purposely stretched HB 2023 to include them.[7] *Cf. City of Charleston v. A Fisherman's Best, Inc.*, 310 F.3d 155, 160 (4th Cir. 2002) (finding preempted a city resolution forbidding access to ports for vessels using longline tackle, a fishing method authorized by federal law). The result is a state law that conflicts with Congress's express intent to exempt certain conduct from regulation or criminal sanctions.[8] *See, e.g., State v. Harden*, 938 So. 2d 480, 492–93 (Fla. 2006) (concluding "that Florida's anti-kickback statute criminalizes conduct that federal law specifically intended to be lawful and shielded from prosecution"). HB 2023 also constitutes a conflict in the overt policy adopted by Congress. With regards to the national mail system, Congress has made clear that it has one overarching policy goal for all federal laws and regulations: "In determining all policies for postal services, the Postal Service shall give the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail." 39 U.S.C. § 101. The private carriage exceptions further that goal, and thus HB 2023's limitations on the private carriage of mail are an obstacle to achieving its objectives.

Finally, unlike the statute at issue in *Puente*, all applications of HB 2023 concern the exclusive federal interest—the delivery of mail-in ballots. Given that Arizona law already criminalized the failure to deliver a collected ballot, *see* A.R.S. § 16-1005(F), HB

---

[7] Although Plaintiff focuses on the private hands exception for simplicity sake, HB 2023 conflicts with a number of other exceptions to the PES. *See e.g.*, 18 U.S.C. § 1696(a) and 39 C.F.R. § 310.3(e) (providing for "[c]arriage prior or subsequent to mailing").

[8] Multiple chapters within Title 18 include an express savings clause. *See, e.g.*, 18 U.S.C. § 1838 ("[T]his chapter shall not be construed to preempt . . . ."); *id*. at § 1468; *id*. at § 48; *id*. at § 38. If Congress had intended to permit states to regulate the delivery of mail, it would have included an express savings clause. *See Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1153 (9th Cir. 2010) (finding state law preempted where there was no "savings clause in the Act . . . .").

2023's only purpose is to prohibit individuals from *delivering* mail-in ballots. *Cf. Puente*, 821 F.3d at 1107 (noting that the ID theft law applied "equally to unauthorized aliens, authorized aliens, and U.S. citizens."). The fact that the Arizona legislature felt the need to exempt Postal Service workers aptly demonstrates that HB 2023's prohibition specifically targets mail delivery.

### III. HB 2023 Violates Plaintiff's First Amendment Rights.

#### A. Restrictions on Ballot Delivery Constitute Restrictions on Speech.

Defendant's *only* response (at 10–11) to Plaintiff's First Amendment claim is that HB 2023 does not regulate speech because the delivery of mail does not constitute expressive conduct. Yet, the Supreme Court has long recognized that speech-facilitating conduct is protected by the First Amendment. For example, campaign contributions are protected by the First Amendment because those contributions facilitate a political campaign's speech. *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 400 (2000) (Breyer, J., concurring) ("[A] decision to contribute money to a campaign is a matter of First Amendment concern—not because money is speech (it is not); but because it enables speech."). In fact, Defendant has argued to the Ninth Circuit that even revealing the names of political contributors violates the First Amendment. *See* Brief for Amici States (Arizona) at 2, *APF v. Becerra*, No. 16-55727 (9th Cir. 2017) (contending that "disclosure rules invariably chill the freedom of association").

Notably, the Supreme Court has held that the *delivery* of recorded speech is expressive conduct:

> [T]he delivery of a tape recording might be regarded as conduct, but given that the purpose of such a delivery is to provide the recipient with the text of recorded statements, it is like the delivery of a handbill or a pamphlet, and as such, it is the kind of 'speech' that the First Amendment protects.

*Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001).[9] If it were not, the government could

---

[9] *See also Smith v. California*, 361 U.S. 147 (1959) (striking down statute imposing strict liability on a book seller); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 59–61 (1963) (striking down regulations imposed on book distributors); *Publius v. Boyer-Vine*, 237 F.

{00381050.1}                                -8-

circumvent the First Amendment's protections by simply regulating speech-facilitating resources:

> [W]e need to use things, including money (and paper, and sidewalks, and telephones, and shoe leather), to make our views known, and governmental restrictions on the use of resources for the purpose of communicating a message are properly understood as restrictions on speech. If the city council passed an ordinance forbidding anyone to use the subway to attend a protest demonstration, no one would defend the ordinance on the ground that "subways are not speech." Laws prohibiting the use of certain things to enable speech are restrictions on speech.

Michael W. McConnell, *Reconsidering Citizens United As A Press Clause Case*, 123 YALE L.J. 412, 421 (2013); *see also ACLU v. Las Vegas*, 466 F.3d 784, 799 (9th Cir. 2006). Furthermore, unlike a postal worker who must deliver mail, individuals, like Plaintiff, engage in protected, expressive conduct when choosing whose mail to carry. Thus, Plaintiff's conduct is akin to a cable company's decision to carry certain content and not others. *USTA v. FCC*, 825 F.3d 674, 742 (D.C. Cir. 2016) (holding that "entities that serve as conduits for speech produced by others receive First Amendment protection").

### B. Defendant Concedes That HB 2023's Restrictions Are Content-Based and Not Narrowly Tailored.

Defendant rests his entire defense on his view that HB 2023 does not implicate the First Amendment. Thus, if the Court rejects that position, then the Court must find that Defendant has conceded Plaintiff's assertion that HB 2023 is a content-based restriction that is not narrowly tailored to further a compelling government interest.[10]

Even if Defendant had tried, it would have been difficult to satisfy his burden. For example, HB 2023's exemptions wholly undermine the purported government interest it aims to protect. HB 2023 purports to exempt a voter's family members, household members, and caregivers from the ballot delivery prohibition. Yet, Arizona cannot offer

---

Supp. 3d 997, 1008 (E.D. Cal. 2017) (holding that a website owner "has a First Amendment right to distribute and facilitate protected speech on the site.").
[10] *See Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) (holding that when a responsive memorandum "fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.") (citations omitted)*; see also* L.R. Civ. 7.2(i).

any evidence that such individuals are less likely to commit fraud. Moreover, HB 2023 wholly exempts certain elections held by special taxing districts. Such exemptions demonstrate that HB 2023 is not narrowly tailored to further any purported government interest. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2231 (2015) (concluding that a sign ordinance's exemptions undermined its purported interest); *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 905 (9th Cir. 2009) ("[E]xceptions [can] undermine and counteract the interest the government claims it adopted the law to further; such a regulation cannot directly and materially advance its aim") (internal citations omitted).

**IV.     HB 2023 Is Void for Vagueness.**

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). HB 2023 is void for vagueness because (1) it fails to provide fair notice of what is prohibited and by whom; (2) it delegates questions about the scope and application of the law to law enforcement, judges, and juries to resolve on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application; and (3) it has a chilling effect on the exercise of First Amendment freedoms. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011). Defendant's Opposition barely touches the first point, and does not address the second and third points at all.

On the first point, Defendant summarily concludes (at 12) that HB 2023 is not void for vagueness because "H.B. 2023 provides crystal-clear notice about what it allows and forbids." Yet, Defendant fails to address the language in HB 2023 that is at the center of Ms. Knox's vagueness claim—"any person who is allowed by law to transmit United States mail is deemed not to have collected an early ballot if … engaged in official duties." Instead, Defendant simply reads out this key exemption (at 12):

> H.B. 2023 allows voters to "entrust a caregiver, family member, household member, mail carrier, or elections official to return their early ballots, but may not entrust other, unauthorized third parties to do so." . . . This summary

of H.B. 2023 is not only plainly correct, but it resolves any uncertainty that might ever have existed about its scope.[11]

In other words, Defendant implicitly acknowledges that this Court would have to delete the Lawful Carriage Exemption to avoid finding HB 2023 unconstitutionally vague. This Court must reject Defendant's invitation to violate the basic tenants of statutory construction. *See United States v. Stevens*, 559 U.S. 460, 481 (2010) ("We will not rewrite a law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place.") (alterations and citations omitted).

And without rewriting the language, HB 2023 is vague on its face and is subject to inconsistent interpretations. Although the law exempts from its criminal penalties ***"any other person who is allowed by law to transmit United States mail [if] engaged in official duties,"*** the term "official duties" is undefined and could encompass a myriad of circumstances. For example, precinct committeepersons ("PC"), like Ms. Knox, could very likely characterize her PC work as "official duties." After all, a state law governing precinct committeepersons specifically states that, "[t]he minimum duties of a precinct committeeman shall be to assist the precinct committeeman's political party in voter registration and to assist the voters of that political party to vote on election days." A.R.S. § 16-822(E). Another example is that an official volunteer of a non-profit, non-partisan political membership organization, like Ms. Knox is for the League of Women Voters, could believe that her door-to-door canvassing on behalf of the organization constitutes "official duties." In short, while Defendant chides Ms. Knox (at 12) for "offer[ing] no clue about what 'official duties' she could possibly be engaged in," the fact of the matter is that there are many "official duties" she is engaged in, and Ms. Knox cannot know for certain whether she will be charged with a felony if she collects and delivers a mail-in ballot while discharging those duties because HB 2023 fails to define that ambiguous term. Thus, HB

---

[11] Defendant's assertion (at 2 & 12) that this Court already determined in *Democratic Nat'l Comm. v. Reagan* that the exemptions in HB 2023 are clear is both inaccurate and misplaced. This Court was not asked to—nor did it—interpret the meaning or application of HB 2023's exemptions in that case.

2023 fails to give a "person with ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned*, 408 U.S. at 108.

HB 2023 is also void for vagueness because it authorizes subjective, arbitrary, and even discriminatory enforcement. Tellingly, Defendant is silent on the issue of enforcement—probably because he cannot deny that the vague language of HB 2023 opens it up to differing interpretations by law enforcement, prosecutors, judges, and juries. In fact, the Maricopa County Attorney recently issued a public statement acknowledging confusion about the law, but nevertheless threatening to aggressively enforce the law—without regard to all of the exemptions in HB 2023:

> I want to assure anyone who may be planning to engage in ballot harvesting for this Primary Election and General Election that it is a class 6 felony to knowingly collect a mail-in ballot for the primary election . . . unless you are a family member, household member, or caregiver for the voter to whom the ballot was issued. . . . The Maricopa County Attorney's Office is committed to protecting our voting process by enforcing this law . . . .

July 16, 2018 MCAO "Statement on Ballot Harvesting," attached as Ex. A. Notably absent from the County Attorney's threat of prosecution are HB 2023's exemptions for Postal workers, election officials, and any other person engaged in official duties (whatever that means). This Statement perfectly exemplifies how HB 2023 authorizes and encourages arbitrary and discriminatory enforcement, and the credible and grave dangers that Ms. Knox faces for her lawful conduct.

Finally, HB 2023 is subject to a more demanding standard of scrutiny due to its chilling effect on protected speech and its imposition of criminal sanctions. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (applying heightened scrutiny when a statute regulates protected speech "to ensure that ambiguity does not chill protected speech."); *Maldonado v. Morales*, 556 F.3d 1037, 1045 (9th Cir. 2009) (applying heightened scrutiny to criminal laws). As discussed above, the delivery of mail constitutes protected speech and HB 2023's regulation on the delivery of mail is a violation of Plaintiff's First Amendment rights. There can be no question that HB 2023 is chilling speech. Ms. Knox and countless other Arizonans have declined to deliver mail-in ballots

for their fellow voters for fear they will be criminally prosecuted. The ambiguities in HB 2023 are fatal and the law should be declared void for vagueness.

**V.      Neither Laches Nor *Purcell* Bar Plaintiff's Claims or the Requested Relief.**

Contrary to Defendant's arguments, the doctrine of laches and the *Purcell* Doctrine do not bar Plaintiff's claims or the relief she seeks. There are at least three independent reasons why neither doctrine applies: (1) Plaintiff did not unreasonably delay in bringing her claims; (2) Defendant only makes conclusory assertions that he has suffered prejudice and fails to present any evidence of actual and specific prejudicial losses; and (3) Plaintiff did not seek emergency relief and, in fact, agreed to a longer briefing schedule than afforded by the rules of procedure. In addition, this case does not involve laws relating to voter registration, ballot access, voter IDs, polling places, or other laws relating to election administration, which may be difficult to resolve in close proximity to an election.

Defendant's heavy reliance on *Ariz. Libertarian Party v. Reagan*, 189 F. Supp. 3d 920, 922–23 (D. Ariz. 2016) (*ALP*), is also misplaced. In *ALP*, Plaintiffs challenged an election law setting standards on the types and numbers of signatures required by candidates to be listed on a primary election ballot. *Id*. at 921. Plaintiffs filed an emergency motion for a TRO a year after they informed the State Elections Director of their intent to challenge the laws constitutionality and a month after they filed their complaint. *Id*. at 924. Moreover, the TRO was filed three weeks before the deadline for nomination petitions. *Id*. Applying laches to deny the plaintiffs' TRO and preliminary injunction motion, the Court found that the delay in filing the suit prejudiced defendant's ability to develop the necessary facts and would prejudiced candidates who were already "collecting signatures under the current law," *id*. at 924–25. Notably, the Court only denied the plaintiffs' request for preliminary relief, but did not dismiss the case. *Id*. at 925.

Here, unlike in *ALP*, Defendant does not—and cannot—claim that Ms. Knox knew of these claims and failed to bring them. *See Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1126 (9th Cir. 2006) ("There must be particularized evidence to support the assertion that the time lag between knowledge of the potential action and the filing of the

action was unreasonable in length. Mere delay alone will not establish laches."). Although Defendant emphasizes (at 13) that Ms. Knox has known about HB 2023 since 2016, knowing about and opposing the law does not mean that she knew of the legal claims she now brings to challenge the law. Indeed, Ms. Knox "did not dally or unconscionably sit on [her] claim." *Herb Reed Enters. v. Florida Entm't Mgmt.*, 736 F.3d 1239, 1246–47 (9th Cir. 2013). Moreover, when an action is brought within the relevant limitations period, as it was here, courts "presume that laches is inapplicable." *Id.* at 1247.

In any event, Plaintiff's claims are not barred because Defendant has not suffered any prejudice. "Prejudice to the other party is the essential element of laches." *Sandvik v. Alaska Packers Ass'n*, 609 F.2d 969, 972 (9th Cir. 1979). Here, Defendant says in passing only (at 14) that, "Plaintiff's delay also prejudices the State severely, forcing the State to litigate this matter—and risk the enjoining of an election law—on the eve of an election." Being forced to mount a legal defense, however, is not sufficient prejudice. *See Shouse v. Pierce Cty.*, 559 F.2d 1142, 1147 (9th Cir. 1977) (in determining whether delay has prejudiced a defendant, courts consider only prejudice that stems from the plaintiff's delay in bringing suit, not difficulties caused by the fact of having been sued). Moreover, "[a]ssertions of prejudice cannot be 'conclusory' and must be supported by evidence establishing specific prejudicial losses that occurred during the period of delay." *Melendres v. Arpaio*, 154 F. Supp. 3d 845, 853 (D. Ariz. 2016). "[G]eneric claims of prejudice do not suffice for a laches defense in any case." *Id.* (internal citation omitted). Because Defendant has not been prejudiced, the laches defense does not apply.

Third, Plaintiff did not seek emergency relief or insist on an unreasonable schedule, which could have prejudiced the administration of justice. Plaintiff filed this action for declaratory and injunctive relief, but did not ask for a temporary restraining order. She did not request an emergency hearing and she ultimately agreed to a schedule that gave both sides more time to brief the issues than what is permitted under the rules. Although Plaintiff believes that her claims raise purely legal issues, she made herself available for a deposition at Defendant's request. Defendant deposed Ms. Knox and did not seek any

1 other discovery. In short, Plaintiff, unlike the Plaintiffs in *ALR*, did not create a situation where either Defendant or the Court was forced to steamroll through the legal issues.

Finally, Defendant invokes the *Purcell* Doctrine (at 14) to argue that the Court cannot enjoin HB 2023. In *Purcell*, the Supreme Court vacated a preliminary injunction of an Arizona voter ID law because of two factors: "the imminence of the election and the inadequate time to resolve the factual disputes," *Purcell v. Gonzalez*, 549 U.S. 1, 5–6 (2006). Here, the *Purcell* Doctrine is inapplicable because the second factor is not present—there are no factual disputes between the parties. Relatedly, *Purcell*'s logic does not extend to *permanent* injunctions—as is the case here—and has only been applied to preliminary injunctions and TROs. Moreover, unlike the cases where *Purcell* has been applied, this is not a case seeking to invalidate or alter election procedures or processes. Thus, Plaintiff seeks to enjoin the Attorney General, not an election official. In sum, Plaintiff's action seeks a declaration that she and other individuals are permitted to deliver mail-in ballots under the Private Carriage Exception without the threat of prosecution.

## VI. The Public Interest and Balance of Equities Tip Sharply in Plaintiff's Favor.

"The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." *Free v. Bland*, 369 US 663, 666 (1962). The public interest and the balance of equities favor preventing the violation of Plaintiff's constitutional rights. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice"); *see also* PI Mot. at 15–16.

## VII. Conclusion

For the foregoing reasons, Plaintiff Rivko Knox respectfully requests that this Court declare HB 2023 unconstitutional and issue a permanent injunction, enjoining Defendant from implementing and enforcing HB 2023.

| | |
|---|---|
| 1 | Respectfully submitted this 3rd day of August, 2018. |
| 2 | |
| 3 | **SCHARFF PLC** |
| 4 | By /s/ *Spencer G. Scharff* |
|   | Spencer G. Scharff |
| 5 | **COPPERSMITH BROCKELMAN PLC** |
| 6 | |
| 7 | By /s/ *Roopali H. Desai* |
|   | Roopali H. Desai |
| 8 | |
| 9 | *Attorneys for Plaintiff* |