# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Rivko Knox,

       Plaintiff,

v.

Mark Brnovich,

       Defendant.

No. CV-18-02089-PHX-DLR

**ORDER**

In addition to the arguments presented in the briefs and any other matters the parties wish to argue,

**IT IS ORDERED** that the parties prepare to discuss the following questions during the August 10, 2018 bench trial:

**A. Preemption**

**Questions for Plaintiff:**

1. Is it Plaintiff's position that absentee ballots are "letters or packets" under federal law because they are mailable if the voter chooses to do so?

2. Plaintiff argues that "once sealed in an envelope with pre-paid postage, a voted early ballot becomes a piece of mail." (Doc. 2 at 2.) If true, what other federal postal regulations might apply to those ballots once sealed in an envelope with pre-paid postage?

3. Is a sealed, voted early ballot a piece of mail even if the voter has no intention

of returning the ballot via mail (for example, if the voter intends to personally return the ballot to a polling place or county recorder's office)?

4. If Arizona allowed for early absentee voting, but provided that such ballots could be returned only by the voter herself and only to a polling place or county recorder's office, would the absentee ballot still be deemed a piece of mail? What if Arizona required that such ballots be sealed in an envelope for which postage was not pre-paid? Would the ballot be considered mail if no stamp was affixed?

5. Please identify the precise point at which an Arizona absentee ballot becomes a piece of mail subject to federal regulation.

6. Explain specifically how compliance with H.B. 2023 would cause someone to violate any provision of federal law or present an obstacle to Congress' intent in enacting the Postal Act of 1845.

7. States are not constitutionally required to permit voting by absentee ballot. *See McDonald v. Bd. of Election Comm'rs of Chic.*, 394 U.S. 802, 807-08 (1969); *Crawford v. Martion Cty. Election Bd.*, 553 U.S. 181, 209 (2008) (Scalia, J., concurring in the judgment) ("That the State accommodates some voters by permitting (not requiring) the casting of absentee or provisional ballots, is an indulgence—not a constitutional imperative that falls short of what is required."). Is it Plaintiff's position that states can functionally prohibit anyone (including United States postal workers) from delivering absentee ballots by not making them mailable in the first place, but once a state gives voters the option to return an absentee ballot by mail, the state must make such ballots mailable to the full extent permitted by federal law? If so, would such a rule have a chilling effect on a state's willingness to experiment with more convenient absentee voting options?

**Questions for Defendant:**

1. To the extent H.B. 2023 prohibits certain persons from providing gratuitous private mail delivery services with respect to absentee ballots that are mailable, does the law prohibit something that federal law otherwise would have allowed? Stated

differently, but for H.B. 2023, would anything in federal law prohibit Plaintiff from collecting and delivering a voted absentee ballot sealed in a pre-paid postage envelope?

## B. First Amendment

**Questions for Plaintiff:**

1. Has any court found that a person has a First Amendment right to provide gratuitous private mail delivery services to third parties? If so, please provide the case citation(s).

2. Is Plaintiff's First Amendment claim premised on a belief that collecting and delivering a ballot is an inherently expressive activity, or instead that access to and the ability to participate in the delivery of mail are protected by the First Amendment, regardless of whether the activity is expressive? If the former, how is Plaintiff's argument not identical to the First Amendment claim rejected in *Democratic National Committee v. Reagan*, No. CV-16-01065-PHX-DLR, 2018 WL 2191664, at *17 (D. Ariz. May 10, 2018), in which this Court stated:

> Conduct, such as collecting a ballot, is not "speech" for purposes of the First Amendment simply because "the person engaging in the conduct intends thereby to express an idea." *U.S. v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Rather, the First Amendment extends "only to conduct that is inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006). The Court . . . find[s] persuasive the Fifth Circuit's opinion in *Voting for Am. v. Steen*, 732 F.3d 382 (5th Cir. 2013), which considered a challenge to various Texas laws that regulated the receipt and delivery of completed voter registration applications. The Fifth Circuit rejected the argument that collecting and delivering voter registration applications were inherently expressive activities protected by the First Amendment. *Id.* at 392. In doing so, the court agreed that "some voter registration activities involve speech—'urging' citizens to register; 'distributing' voter registration forms; 'helping' voters fill out their forms; and 'asking' for information to verify registrations were processed successfully." *Id.* at 389. It determined, however, that "there is nothing inherently expressive about receiving a person's completed [voter registration] application and being charged with getting that application to the proper place." *Id.* at 392 (internal quotation and citation omitted). Likewise, though many [get-out-the-vote] activities involve First Amendment protected activity, there is nothing inherently expressive or communicative about collecting a voter's completed early ballot and

>     delivering it to the proper place.
>
>     Moreover, assuming that H.B. 2023 implicates protected associational rights, it does not impose severe burdens. Nothing in H.B. 2023 prevents Plaintiffs from encouraging, urging, or reminding people to vote, informing and reminding them of relevant election deadlines, helping them fill out early ballots or request special election boards, or arranging transportation to on-site early voting locations, post offices, county recorder's offices, or polling places. *See id.* at 393 (noting that voter registration volunteers remained "free to organize and run the registration drive, persuade others to register to vote, distribute registration forms, and assist others in filling them out"); *League of Women Voters of Fla. v. Browning*, 575 F.Supp.2d 1298, 1322 (S.D. Fla. 2008) ("[The challenged law] does not place any restrictions on who is eligible to participate in voter registration drives or what methods or means third-party voter registration organizations may use to solicit new voters and distribute registration applications. Instead, [it] simply regulates an administrative aspect of the electoral process—the handling of voter registration applications by third-party voter registration organizations after they have been collected from applications."). H.B. 2023 merely regulates who may possess, and therefore return, another's early ballot. Accordingly, H.B. 2023 no more than minimally burdens Plaintiffs' associational rights.

How is Plaintiff's argument that ballot collection and delivery is "speech-facilitating conduct" (Doc. 18 at 9) any different than the First Amendment arguments the Court rejected in the above-quoted passage? If necessary, Plaintiff should prepare to distinguish the Fifth Circuit's *Steen* case, which the Court found persuasive in *Democratic National Committee*.

    3. The First Amendment applies both to the federal government and to the individual states, meaning neither the federal government nor the individual states may pass laws that unduly burden protected speech. With this principle in mind, was Congress required to permit gratuitous private mail delivery in the first place? Stated differently, would Congress have violated Plaintiff's First Amendment rights if it had prohibited all forms of private mail delivery? If not, how does H.B. 2023 unconstitutionally burden those same First Amendment rights merely by limiting the categories of persons who can deliver absentee ballots, when the federal government could have prohibited an even broader range of activity without contravening the First

Amendment?  The Court would like Plaintiff to discuss this question without reference to preemption principles because whether a law violates the First Amendment by burdening protected speech is a different question than whether a state law is preempted by federal law.

### C.  Vagueness

**Questions for Plaintiff:**

1. In her sworn declaration, Plaintiff states: "It is my understanding that if I were to continue to offer or be willing to deliver mail-in ballots for qualified electors, who are unrelated to me and with whom I do not reside in the same home, Defendant would prosecute me under HB 2023."  (Doc. 1-1 ¶ 20.)  Defendant seems largely to agree with that understanding (except, perhaps, that H.B. 2023 does not prohibit anyone from being "willing" to deliver mail-in ballots, so long as they do not actually do so).  How, then, is H.B. 2023 vague if Plaintiff understands that her conduct would be illegal?

2. Is it Plaintiff's position that  H.B. 2023 is unconstitutionally vague because she does not know whether her conduct would be illegal, or that she knows H.B. 2023 clearly outlaws her conduct, but it does so in a manner than either abridges her First Amendment rights or conflicts with federal law?  Are these mutually exclusive, alternative theories and, if not, how can they be coherently reconciled?

**Questions for Defendant:**

1. H.B. 2023 provides that "[a]n election official, a United States postal worker or any other person who is allowed by law to transmit mail is deemed not to have collected an early ballot if the official, worker or other person is engaged in official duties."  A.R.S. § 16-1005(H).  By its plain language, the law contemplates the existence of others besides United States postal workers who are allowed to transmit United States mail as part of their official duties.  What are some examples of people who fall into this category?

2. To what "law" does the phrase "allowed by law to transmit United States mail" refer?

3. Is there any Arizona law, other than H.B. 2023, that prohibits or otherwise limits who may collect and deliver a mailable item?

### D. Timeliness and Other Concerns

**Questions for Plaintiff:**

1. H.B. 2023 was enacted in 2016. Plaintiff knew about the law at that time and actively opposed its passage. Plaintiff also engaged in ballot collection activity prior to H.B. 2023's passage and has desired to do so since. (*See* Doc. 1-1 ¶¶ 8-9, 11.) Plaintiff therefore could have challenged H.B. 2023 at any point after its passage, including at any point in 2017, when no statewide elections were scheduled. An earlier challenge would have provided the parties and the Court with more time to consider these important constitutional questions, afforded time for appellate review, and allowed Arizona to implement any resulting court orders prior to the start of a statewide election season. Yet Plaintiff brought this lawsuit mere weeks before the start of statewide early voting, thereby creating an exigency that could have been avoided had the lawsuit been filed prior to the cusp of the midterm election season. Why the delay?

2. If the Court were to find that H.B. 2023 is unconstitutional, could it nonetheless defer the effective date of any permanent injunctive relief, given the proximity of the filing of this lawsuit to the next scheduled election?

3. As the Court noted in *Democratic National Committee*, H.B. 2023 closely follows the recommendation of the bipartisan Commission on Federal Election Reform, chaired by former President Jimmy Carter and former Secretary of State James A. Baker III, which in 2005 wrote:

> Fraud occurs in several ways. Absentee ballots remain the largest source of potential voter fraud. . . . Absentee balloting is vulnerable to abuse in several ways: . . . Citizens who vote at home, at nursing homes, at the workplace, or in church are more susceptible to pressure, overt and subtle, or to intimidation. Vote buying schemes are far more difficult to detect when citizens vote by mail. States therefore should reduce the risks of fraud and abuse in absentee voting by prohibiting "third-party" organizations, candidates, and political party activists from handling absentee ballots.

*Building Confidence in U.S. Elections* § 5.2 (Sept. 2005) ("Carter-Baker Report"), *available at* https://www.eac.gov/assets/1/6/Exhibit% 20M.PDF.) Is it Plaintiff's position that the Commission on Federal Election Reform recommended unconstitutional changes to state laws?

**Questions for Defendant:**

1. If the Court were to find that H.B. 2023 is unconstitutional, could it nonetheless defer the effective date of any permanent injunctive relief until after the upcoming elections, giving the timing of this lawsuit?

2. If the Court were to enjoin H.B. 2023 immediately, how as a practical matter would such a ruling affect Arizona's preparations for the upcoming midterm elections? Please be specific.

Dated this 8th day of August, 2018.

Douglas L. Rayes
United States District Judge